**Stephen D. LITTLE and Kathryn L. Dietz, Plaintiffs and Appellants,**

**v.**

**Helen TRACY, as Executive Director of the North Dakota Workers' Compensation Bureau, and the North Dakota Workers' Compensation Bureau, Defendants and Appellees.**

**Civ. No. 920193.**

Supreme Court of North Dakota.

March 11, 1993.

Dietz & Little, Bismarck, for plaintiffs and appellants; argued by Kathryn L. Dietz, pro se. Appearance by Stephen D. Little.

Ken R. Sorenson (argued), Asst. Atty. Gen., North Dakota Workers' Compensation Bureau, Bismarck, for defendants and appellees.

MESCHKE, Justice.

In a review of rulemaking, we consider whether a new agency regulation on arbitration of an employee's claim exceeds the authority of the Workers' Compensation Bureau. The statute authorizes an employee-claimant to elect decision by arbitrators rather than by a Bureau official, but the regulation gives the employer the power to refuse the employee's election. We hold that, because it exceeds the scope of the statute, the regulation is invalid.

The 1991 North Dakota Legislature enacted a "hoghouse" bill changing much workers' compensation law. One of 77 new sections enacted NDCC 65–02–15 through 65–02–18 to authorize binding panel arbitration to decide a claim at the election of the employee-claimant, as an alternative to the typical administrative decision. The new sections establish proce-

dures for listing eligible arbitrators and for selecting the panel of arbitrators for each claim,[1] for removing an arbitrator for cause,[2] and for the employee-claimant to elect arbitration of the claim "in lieu of a formal administrative hearing or judicial remedy."[3] A decision of an arbitration panel is declared "final and nonreviewable by a district court."[4]

To implement this arbitration alternative, the Bureau adopted lengthy regulations at NDAC 92–01–02–26. *See* NDCC §§ 65–02–08;[5] 28–32–02(1).[6] After a public hearing by the Bureau and approval of the rules by the North Dakota Attorney General "as to their legality," as required by NDCC 28–32–02, the new regulations were adopted as authorized by NDCC 28–32–03, filed with the office of the legislative council, and effective November 1, 1991.

After publication of the new rules, Stephen D. Little and Kathryn L. Dietz appeal-

---

1. NDCC 65–02–15 says:

   *Workers' compensation binding arbitration panel—Membership.* The bureau shall establish four regional listings of persons who may serve as arbitrators for workers' compensation proceedings. Each regional listing must contain an equal number of names submitted to the director by an organization, statewide in scope, which, through its affiliates, embraces a cross section and a majority of the organized labor of the state; an equal number of names submitted to the director by a recognized statewide organization of employers, representing a majority of employers; and a similarly equal number of names selected by the bureau from applications by interested persons throughout the state who demonstrate the unique ability, experience, and qualifications to serve as arbitrators. Each list must be revised every three years. The people whose names appear on a regional listing must reside in that region. When a disputed claim is submitted for binding arbitration, the employee shall select a name from the appropriate regional list that was submitted by the labor organization; the employer shall select a name from the appropriate regional list that was submitted by the statewide organization of employers or shall designate the bureau to do so; and the selected employee and employer representatives shall select a name from the appropriate regional list of those individuals who have been selected to serve as arbitrators based upon their experience and ability. The appropriate region is the region in which the employee resides. If the employee resides out of state, the appropriate region is the region of the situs of employment. As an alternative selection procedure, by mutual agreement, the employee and the employer may designate themselves as the employee and employer representatives on the panel and together shall select the third panel member from the appropriate regional list of those individuals who have been selected to serve as arbitrators based upon their experience and ability. Panel members are entitled to remuneration for their services at a rate set by the bureau and to travel expenses at the rate in effect for state employees. The bureau shall provide staff services to the panel members. The salaries and expenses of the panel must be paid from money appropriated to the bureau for that purpose.

2. NDCC 65–02–16 says:

   *Removal of a panel member.* The director may remove a member of the workers' compensation binding arbitration panel for cause.

3. NDCC 65–02–17 says:

   *Binding arbitration panel—Attorneys' fees.* Following constructive denial of a claim or issuance of an administrative order under chapter 28–32 reducing or denying benefits, an aggrieved employee may request that the action be submitted to binding arbitration before the workers' compensation binding arbitration panel in lieu of a formal administrative hearing or judicial remedy. The bureau shall pay, at an hourly rate established by the bureau, a claimant's attorneys' fees on claims submitted for binding arbitration. If the aggrieved employee elects not to submit the action to binding arbitration, attorneys' fees may only be paid if the employee prevails.

4. NDCC 65–02–18 says:

   *Administrative orders—Decisions of binding arbitration panel—Appeals.* An appeal of an administrative order is subject to section 28–32–14. A decision of the workers' compensation binding arbitration panel is final and nonreviewable by a district court, except as provided in section 65–05–04.

   The meaning of the first sentence of this section is difficult to construe. It is presumed that an entire statute is intended to be effective. NDCC 1–02–38. It is unclear how reconsideration under NDCC 28–32–14 and an appeal are intended to fit with a "final and nonreviewable" decision of an arbitration panel.

5. NDCC 65–02–08 says:

   The bureau shall adopt such rules, not inconsistent with this title, as may be necessary to carry out this title.

6. NDCC 28–32–02(1) says:

   Every administrative agency is authorized to adopt, and from time to time to amend or repeal, reasonable rules in conformity with

ed directly to the district court. *See* NDCC 28–32–15(2).[7] They challenged NDAC 92–01–02–26(2), which grants an employer the power to refuse an employee-claimant's election of arbitration, as inconsistent with NDCC 65–02–17, which grants an employee-claimant the power to select arbitration. The district court ruled that the "legislative history shows the legislature expected *both* employer and employee to consent to enter into binding arbitration" and that the regulation is "valid and legal and is not in violation of N.D.C.C. § 28–32–19.1(3)."[8] (emphasis original).

Little and Dietz appeal to this court, arguing that the Bureau exceeded its authority because the regulation conflicts with NDCC 65–02–18, which gave an employee "an absolute right to choose the arbitration dispute resolution process" and "does not allow for or contemplate employer refusal to engage in arbitration."

## I. STANDING

■ The Bureau questions whether Little and Dietz have standing to challenge the regulation, noting that it questioned their standing in the district court but the court did not rule on standing. NDCC 28–32–15(2) allows "[a]ny interested person who has participated in the rulemaking pro-cess of an administrative agency" to appeal the agency's rulemaking action. Since Little and Dietz "attended and participated in the North Dakota Workers Compensation Bureau rule-making hearing," and "in light of their role as licensed attorneys who represent numerous claimants before the North Dakota Workers Compensation Bureau," they assert standing to challenge the regulation.

The procedure for direct appeal from administrative rulemaking enacted in NDCC 28–32–15 is new. *See* 1991 ND Laws ch. 342, § 23. It is similar to the procedure for review of rulemaking under the federal Administrative Procedure Act. *See* 5 U.S.C. § 553. Like NDCC 28–32–02(3),[9] 5 U.S.C. § 553(c) says: "[T]he agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." North Dakota's Administrative Practice Act, like the federal act, does not define "interested persons."

Generally, North Dakota has employed a "factually aggrieved" standard, similar to the "injury in fact" standard employed in federal precedents on standing for appeal of adverse administrative decisions. *See*

the provisions of any statute administered or enforced by the agency.

**7.** NDCC 28–32–15(2) says:

Any interested person who has participated in the rulemaking process of an administrative agency may appeal the agency's rulemaking action if the appeal is taken within ninety days after the date of publication in the North Dakota Administrative Code of the rule resulting from the agency rulemaking action.

**8.** NDCC 28–32–19.1 says:

*Scope of and procedure on appeal from agency rulemaking.* A judge of the district court shall review an appeal from an administrative agency's rulemaking action based only on the record filed with the court. If an appellant requests documents to be included in the record but the agency does not include them, the court, upon application by the appellant, may compel their inclusion. After a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court shall affirm the agency's rulemaking action unless it finds that any of the following are present:

1. The provisions of this chapter have not been substantially complied with in the agency's rulemaking actions.
2. A rule published as a result of the rulemaking action appealed is unconstitutional on the face of the language adopted.
3. A rule published as a result of the rulemaking action appealed is beyond the scope of the agency's authority to adopt.
4. A rule published as a result of the rulemaking action appealed is on the face of the language adopted an arbitrary or capricious application of authority granted by statute. If the rulemaking action of the agency is not affirmed by the court, it must be remanded to the agency for disposition in accordance with the order of the court, or the rule or a portion of the rule resulting from the rulemaking action of the agency must be declared invalid for reasons stated by the court.

**9.** NDCC 28–32–02(3) says:

The agency shall adopt a procedure whereby all interested persons are afforded reasonable opportunity to submit data, views, or arguments, orally or in writing, concerning the proposed rule, including data respecting the impact of the proposed rule.

*Application of Bank of Rhame,* 231 N.W.2d 801 (N.D.1975); *Washburn Public School District No. 4 v. State Board of Public School Education,* 338 N.W.2d 664 (N.D.1983). *Compare* Bernard Schwartz, *Administrative Law* § 6.1 (3d ed. 1991); 4 Kenneth Culp Davis, *Administrative Law Treatise* § 24:2 (2d ed. 1983). Yet for rulemaking, those who directly participate to represent persons adversely affected have standing.

In *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Court held that a state agency for the promotion of the apple industry had standing to represent interests of apple growers and dealers when the relief requested required no individualized proof. *See Nader v. Nuclear Regulatory Commission,* 513 F.2d 1045, 1055 (D.C.Cir.1975) ("those who refrain from participation in rulemaking proceedings may not obtain direct judicial review of the regulations resulting"); Laurence H. Tribe, *American Constitutional Law,* § 3–20 (2d ed. 1988). *See also International Brotherhood of Electrical Workers v. Interstate Commerce Commission,* 862 F.2d 330, 334 (D.C.Cir.1988) (union had standing to appeal I.C.C.'s assertion of authority to review arbitrator's award to union member). We conclude that NDCC 28–32–15(2) allows "[a]ny interested person who has participated in the rulemaking process" to represent persons who are factually aggrieved by the regulation.

Little and Dietz represent the interests of their employee-claimant clients who have elected arbitration. Little and Dietz participated in the rulemaking, without objection or protest by the Bureau at the time when they could have supplemented the record to specifically evidence the interests represented. "In the appeal of agency action taken pursuant to section 28–32–02, any person who has participated in the rulemaking process has the right to participate in the appeal." NDCC 28–32–15(5). We conclude that Little and Dietz have representational standing to challenge this regulation.

## II.  THE REGULATION DISPUTED

█ The key statute implemented by the disputed regulation says:

> Following constructive denial of a claim or issuance of an administrative order under chapter 28–32 reducing or denying benefits, an aggrieved employee may request that the action be submitted to binding arbitration before the workers' compensation binding arbitration panel in lieu of a formal administrative hearing or judicial remedy.

NDCC 65–02–17. *See* n. 3 for complete text. The new statutes are silent about an employer's right to elect or refuse arbitration.

The challenged feature of the regulation gives most employers a right to refuse the employee-claimant's election of arbitration.

> In all cases relating to an injury for which the risk or payments are chargeable to an employer with an open account with the bureau, the employer has fifteen days from the date of mailing of the notice to give notice in writing to the bureau if the employer does not agree to submit to binding arbitration. The employer may notify the bureau of its consent to submit to binding arbitration prior to expiration of the fifteen days. An employer that fails to file timely notice in writing of refusal to consent to arbitration is deemed to have consented. If the employer files a timely notice of refusal to consent to arbitration, the matter is deemed submitted for reconsideration and formal rehearing and the employee is not entitled to arbitration. If the risk or payments are not chargeable to any employer, the employee is entitled to binding arbitration upon filing of the request with the bureau.

NDAC 92–01–02–26(2). Although the new statutes express the employer's role in selecting one member of the arbitration panel, *see* NDCC 65–02–15 at n. 1 above, they do not express a role for the employer in the election to arbitrate. Still, the Bureau's regulation makes arbitration hinge in most cases on the employer's consent or refusal.

"It is a basic rule of administrative law that an administrative regulation may not exceed statutory authority or supersede a statute, and that a regulation which goes beyond what the Legislature has authorized is void." *Moore v. North Dakota Workmen's Compensation Bureau*, 374 N.W.2d 71, 74 (N.D.1985); *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692, 701 (N.D.1978). If a regulation conflicts with the statute that it implements, the regulation is beyond the agency's authority to adopt. NDCC 28-32-19.1(3). Such a regulation is invalid.

The Bureau says that "[t]he statute is uncertain as to the rights of the employer," and insists that there "is no language in any of the four arbitration statutes that effectively provides that the employer must submit to arbitration if there is a request for arbitration by an aggrieved employee." The Bureau argues that, because "the employer has a right of appeal and a right not to consent to binding arbitration," it would be an "unjust result" for an employee to "dictate whether or not an employer has a right to an appeal" and to "effectively bar the employer's right of appeal."[10] The Bureau says that the regulation's "interpretation is consistent with the legislative intent" because "[t]he statutory language does not expressly require that the employer submit to arbitration."

The Bureau infers legislative intent to permit the employer to refuse arbitration from a speech by one senator during a conference committee session that recommended an amendment to insert the word "binding" into the sections on arbitration:

Ordinarily, anybody involved with the administrative process would have the option of going through a series of appeals. That is their right under other statutes which presently exist and will continue to exist. However, administratively, if the Bureau properly advises the claimant and the employer of their options, and advises them in a miranda-type of situation that they can waive their rights of appeal and agree to binding arbitration, in my opinion, if they're properly advised and there is proper legislative intent, that can be done. We have a right to remain silent if we're charged with a

---

**10.** When the Legislature established North Dakota's Workmen's Compensation Fund, the enabling act said that the Bureau should have "full power and authority to hear and determine all questions within its jurisdiction, and its decision thereon shall be final." 1919 ND Laws ch. 162, § 17. However, the Act also permitted a claimant to appeal the Bureau's decision to the courts for "trial in the ordinary way"

in case the final action of such Bureau denies the right of the claimant to participate at all in the Workmen's Compensation Fund on the ground that the injury was self-inflicted, or on the ground that the accident did not arise in the course of employment, or upon any other ground going to the basis of the claimant's right,....

*Id.* Virtually identical language is currently found in NDCC 65-10-01.

Originally, the claimant was entitled to appeal the Bureau's decision, with the Bureau named as defendant. 1919 ND Laws ch. 162, § 17. The act was challenged by an employer on the ground, among others, that it violated the Due Process Clauses of the federal and state constitutions. The act was held constitutional. *State ex rel. Amerland v. Hagan*, 44 N.D. 306, 175 N.W. 372 (1919). *See also New York Central R.R. Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917) (New York act constitutional); *Hawkins v. Bleakly*, 243 U.S. 210, 37 S.Ct. 255, 61 L.Ed. 678 (1917) (Iowa act constitutional); and *Mountain Timber Co. v. Washington*, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685 (1917) (Washington's compulsory state fund workmen's compensation law constitutional).

The original North Dakota act provided that "[e]ither party shall have the right to prosecute error as in the ordinary civil cases," meaning either the claimant or the Bureau. 1919 N.D. Laws ch. 162, § 17. The statute was later amended to provide that "appeals to the Supreme Court in such cases shall be triable de novo." 1935 ND Laws ch. 286, § 6.

Beginning in 1947, the employer gained certain rights relating to claimants' awards, including the right to notice of permanent impairment awards by the Bureau and to written protest of the award, resulting in a hearing to show cause before the Bureau. 1947 ND Laws ch. 377, § 1. In 1989, that language was deleted from NDCC 65-05-03.

With the adoption of the Revised Code of 1943, chapter 65-10 on "Appeals" was created. Until 1963, only the claimant had the right to judicial review of an adverse Bureau decision. Then, the Legislature amended NDCC 65-10-01 to say:

"An employer may also appeal a decision of the bureau in any injury case in the manner prescribed in this section." 1963 ND Laws ch. 427, § 3. That provision is the current reading in NDCC 65-10-01.

crime as guaranteed by the Constitution. We can waive that right and confess to the police that we're guilty. It's the same mentality, I think, with this arbitration panel. If they're properly advised, they can waive their rights of appeal, and this would be binding and final which would have a remarkable impact on the system.

Little and Dietz suggest that a statement by another senator during a senate committee session, "the person [claimant] can elect which way to go," evidences a contrary legislative intent. They argue that "[i]t is impossible to tell for certain" about legislative intent from these fragments of legislative history.

█ Random statements by legislative committee members, while possibly useful if they are consistent with the statutory language and other legislative history, are of little value in fixing legislative intent. *See Schaefer v. North Dakota Workers Compensation Bureau,* 462 N.W.2d 179, 181 (N.D.1990) ("Assuming for purposes of argument that the Bureau's expectations are indicative of the Legislature's intent in enacting the amendment, they are not necessarily controlling.") (citations omitted); *Metric Construction, Inc. v. Great Plains Properties,* 344 N.W.2d 679, 683 (N.D.1984) ("The legislative history provides little insight. It mostly consists of sponsor testimony or citizen testimony preserved in the form of sparse committee notes."); *Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy,* 219 N.W.2d 140, 147 (N.D.1974) ("It is our view that we cannot accept Senator Sinner's statement of the objective of the amendment ..., as encompassing all of the objectives of the amendment, or any of the objectives of the amendment, for that matter."). *See also* 2A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* §§ 48.10 ("Statements of committee members or interested parties are not admissible."), 48.13 ("The statements of individual legislators, however, can be given effect if they are consistent with statutory language and other legislative history which justifies reliance upon them as evidence of legislative intent.") (5th ed. 1992 revision).

Furthermore, Little and Dietz argue, the legislative history is not "legally relevant in light of the clear, unambiguous language of the statute," citing NDCC 1–02–05:

> *Construction of unambiguous statute.* When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

They argue that, since the language of NDCC 65–02–17 is very specific in providing "claimants with an absolute right to choose the arbitration dispute resolution process," legislative history cannot be used to expand the language of the statute.

█ Generally, the law is what the Legislature says, not what is unsaid. The Bureau recognizes that "[t]here exists a principle of statutory interpretation that the mention of one thing implies the exclusion of another," citing *In re Township 143 North, Range 55 West, Cass County,* 183 N.W.2d 520 (N.D.1971). That is correct.

> It must be presumed that the Legislature intended all that it said, and that it said all that it intended to say. The Legislature must be presumed to have meant what it has plainly expressed. It must be presumed, also, that it made no mistake in expressing its purpose and intent. Where the language of a statute is plain and unambiguous, the "court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it."

*City of Dickinson v. Thress,* 69 N.D. 748, 290 N.W. 653, 657 (1940) (citations omitted). Usually, when the plain meaning of a statute is apparent, it is unwise and unnecessary to delve further. Therefore, we conclude from the usual rules of statutory construction that the statute gives the employee-claimant an unrestricted election to arbitrate in lieu of an agency hearing.

Still, the Bureau insists that the statute is "vague, ambiguous, uncertain or of doubtful meaning" on the rights of the

employer. Without citation, documentation, or elaboration on the source of those rights, the Bureau insists that "the employer has a right of appeal and a right not to consent to binding arbitration,"[11] even though unexpressed in the new sections. Little and Dietz make no reply to this assertion of "rights of the employer," perhaps because the Bureau's position is so sparely stated. Although the Bureau implies that an employer has some overriding right to refuse compulsory arbitration in a workers' compensation case, the Bureau has not demonstrated that to us.

The regulation adopted by the Bureau exceeds the scope of the Bureau's authority under NDCC 65-02-17 by giving the employer the right to refuse an employee's election of panel arbitration. The regulation is to that extent invalid. We reverse the judgment of the district court and, in conformity with the concluding section of NDCC 28-32-19.1, remand to the agency for disposition in accordance with this opinion.

VANDE WALLE, C.J., and LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to NDCC 27-17-03.

J. PHILIP JOHNSON, J., who was a member of the Court when this case was heard, did not participate in this decision.

NEUMANN and SANDSTROM, JJ., not being members of the Court when this case was heard, did not participate in this decision.

RALPH J. ERICKSTAD, Surrogate Judge, specially concurring.

I specially concur in the majority opinion written by Justice Meschke in this case to expedite its release so that, if the Legislature which is now in session does not believe that we have accurately discerned its intent in this area of the law, it may yet act within this session of the Legislature to clarify the law.

I am concerned not only about who may request arbitration, but also about whether or not an appeal may be taken from a decision of an arbitration panel, and if so, what the scope of review by this Court on appeal will be.

Language which especially requires clarification is that part of Section 65-02-18 N.D.C.C., which reads:

"A decision of the workers' compensation binding arbitration panel is final and non-reviewable by a district court...."

Does this mean that the decision of the arbitration panel is final, or does it mean that an appeal must be taken directly to the Supreme Court and not first to the district court and then to the Supreme Court. If it means that there is an appeal available, is the appeal to be taken under Section 28-32-19, N.D.C.C., in the interpretation of which we have said we must affirm a decision of a Workers Compensation Bureau unless its findings of fact are not supported by a preponderance of the evi-

---

11. In *Hjelle v. Sornsin Construction Co.*, 173 N.W.2d 431, 437 (N.D.1969), this court upheld, against challenges under both the state and federal constitutions, a statute that imposed compulsory arbitration of controversies arising out of any contract entered into by the highway commissioner for construction or repair of highways. In a sequel to that case, *Nelson Paving Co. v. Hjelle*, 207 N.W.2d 225, 227 (N.D. 1973), this court reaffirmed that holding. *See Scherbenske Excavating v. North Dakota State Hwy. Dept.*, 365 N.W.2d 485, 489 (N.D.1985): "Indeed, the ongoing debate over alternative methods of resolving disputes in other catego-

ries of litigation underscores the continuing need for and efficacy of arbitration.... That arbitration continues to be viewed as an acceptable mode of dispute resolution is evidenced by *the removal of the constitutional proscription against specifically enforcing arbitration awards.* Art. IV, § 120, N.D. Const. (1889) (repealed 1976)." *Id.* at n. 5.

*See generally* Dwight Golann, *Making Alternative Dispute Resolution Mandatory: The Constitutional Issues,* 68 Or.L.Rev. 487 (1984) (regarding binding arbitration and due process, particularly at 534 n. 200, 565-66).

dence, or its conclusions are not supported by its findings of fact. *Howes v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 730 (N.D.1988). In determining whether or not the findings of fact are supported by a preponderance of the evidence, we have applied the rule laid down in *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, at 220 (N.D.1979). In *Power Fuels,* in construing the "preponderance of the evidence" standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we said:

> "[W]e do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were approved by the weight of the evidence from the entire record."

This standard of review on appeal is to be contrasted with the standard of review we have applied when considering appeals from an arbitration panel. After considerable discussion of case law from other states construing the statutes comparable to our own, we said:

> "In conformity with the decisions discussed herein construing arbitration statutes similar to our own, we conclude that our review of a judgment entered upon an arbitration award is strictly limited. We adopt the New York rule which is to the effect that save for complete irrationality, arbitrators are free to fashion the applicable rules and determine the facts of a dispute before them without their award being subject to judicial revision. When a motion to vacate an arbitration award is made under subsection 4 of Section 32–29–08, N.D.C.C., the award will not be set aside unless it is completely irrational."

*Nelson Paving Co., Inc. v. Hjelle,* 207 N.W.2d 225, 234 (N.D.1973)

Subsequent to *Nelson Paving,* the Legislature repealed Chapter 32–29, and replaced it with Chapter 32–29.2 N.D.C.C.,

when it adopted the Uniform Arbitration Act with the passage of Chapter 408 of the Session Laws of 1987. The pertinent sections in the current code are Section 32–29.2–12 relating to vacating an award, and Section 32–29.2–13 relating to the modification or correction of an award.

In 1989, when considering the Uniform Arbitration Act, and more particularly subsection 32–29.2–12(1)(c), N.D.C.C., this Court, speaking through Justice Gierke, said:

> "When a court is requested to vacate an arbitration award because the arbitrators 'exceeded their powers,' the award will be vacated only if it is 'completely irrational.' *Scherbenske Excavating v. North Dakota State Highway Department,* 365 N.W.2d 485 (N.D.1985). 'The mistakes that will void an award are those appearing on its face or gross mistakes of the arbitrators extraneously appearing as to their powers or duties, which result in real injustice or constructive fraud.' *Nelson Paving Co., Inc. v. Hjelle,* 207 N.W.2d 225, 230 (N.D.1973). The purpose and effect of this limited review of an arbitration award was succinctly stated for the court by Justice Levine in *Scherbenske,* 365 N.W.2d at 489:

>> 'Obviously, the effect of applying the clearly irrational standard of review is to give to the arbitrators every benefit of every doubt. It affords them the widest latitude to exercise their authority and arrive at their decision without the customary restraints of traditional judicial review. It is but a reflection of the strong public policy favoring the arbitration process.' "

*Byron's Construction Company v. North Dakota State Highway Department,* 448 N.W.2d 630, 632–633 (N.D.1989) (footnote omitted).

The essence of all this is that there is some weighing done by this Court on an appeal when the Administrative Agencies Practice Act is applied, but very little when the provisions of the Uniform Arbitration Act are applied.

Because I believe that unless these issues are considered and the law in this area is clarified during this current session of the Legislature, the interim between this session of the Legislature and the next will be filled with confusion and uncertainty.[1]

1. Not significant from a legal standpoint for a determination of the main issue in this case on appeal, but very interesting from a practical standpoint, is an amendment which is contained in House Bill 1138 in the current Legislative Session which purports to amend Section 65–02–20, N.D.C.C., relating to managed care in Workers Compensation cases. It reads as follows:

"If an employee, employer, or medical provider disputes the recommendation of the managed care administrator, the employee, employer, or medical provider may request binding dispute resolution on the recommendation. The bureau shall make rules providing for the procedures for dispute resolution. Dispute resolution under this section is not subject to chapter 28–32 or section 65–01–14 or 65–02–17 and is not reviewable by any court."

This bill passed the House of Representatives on February 1, 1993, with an amendment which does not affect directly the issues in this case, by a vote of 95 yeas and 0 nays, and is now pending in the Senate where it has been referred to the committee on industry, business and labor.