David VICKERY, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Williston Community Ambulance, Respondent.

Civil No. 950300.

Supreme Court of North Dakota.

April 8, 1996.

Stephen D. Little, of Dietz & Little, Bismarck, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, of Zuger Kirmis & Smith, Bismarck, for appellee.

VANDE WALLE, Chief Justice.

David Vickery appealed from an order affirming a Workers Compensation Bureau decision holding that Vickery lacked standing to petition for a hearing to challenge the Bureau's denial of payment for medical tests he had undergone but which the Bureau found, based on the recommendation of a managed care administrator, were unnecessary. We affirm.

On November 22, 1978, Vickery filed a claim for benefits arising from a work-related low back injury sustained while employed in Williston. The Bureau accepted liability and paid medical expenses and disability benefits for Vickery's acute lumbosacral strain. Vickery later moved to Alaska.

On May 3, 1993, Vickery's Alaskan physician, in response to Vickery's complaints of intermittent low back pain, ordered that Vickery undergo a CT scan and myelogram, which were performed the following day. On June 21, 1993, HealthMarc, the Bureau's managed care administrator, recommended denial of payment for the CT scan and myelogram, reasoning they were not medically necessary. The provider, Anchorage Diagnostic Imaging Center (ADIC), requested review of the denial of its $1,558.25 claim. On August 25, 1993, HealthMarc again recommended denial of payment. Relying on this recommendation, the Bureau denied payment for the CT scan and myelogram in an order dated December 1, 1993.

ADIC sought no further review, but Vickery requested a hearing on the refusal to pay the medical charges. In an order dated March 7, 1995, the Bureau found that the CT scan and myelogram were not medically necessary, and concluded that Vickery could not be billed under North Dakota law for a charge that was not medically necessary. The Bureau therefore ruled that because Vickery was not legally responsible for the billing, he had no standing to request a fact hearing. Vickery appealed to the district court, which affirmed the Bureau's order.

In an appeal from a district court judgment involving a decision of the Bureau, we review the decision of the Bureau and not the decision of the district court. *Nemec v.*

*North Dakota Workers Comp. Bureau,* 543 N.W.2d 233 (N.D.1996). We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with law. *Held v. North Dakota Workers Compensation Bureau,* 540 N.W.2d 166 (N.D.1995).

The legislature in 1993 amended the statute authorizing the Bureau to establish a managed care program. *See* 1993 N.D. Sess. Laws Ch. 621 § 1. The amendment added the following language to N.D.C.C. § 65-02-20:

"If an employee, employer, or medical provider disputes the recommendation of the managed care administrator, the employee, employer, or medical provider may request binding dispute resolution on the recommendation. The bureau shall make rules providing for the procedures for dispute resolution. Dispute resolution under this section is not subject to chapter 28-32 or section 65-01-14 or 65-02-15. A dispute resolution decision under this section requested by a medical provider concerning payment for medical treatment already provided or a request for diagnostic tests or treatment is not reviewable by any court. A dispute resolution decision under this section requested by an employee is reviewable by a court only if medical treatment has been denied to the employee. A dispute resolution decision under this section requested by an employer is reviewable by a court only if medical treatment is awarded to the employee. The dispute resolution decision may be reversed only if the court finds that there has been an abuse of discretion by the dispute resolution panel. Any person providing binding dispute resolution services under this section is exempt from civil liability relating to the binding dispute resolution process and decision."

The legislature, however, specified that the amendment would apply only "to all managed care recommendations that occur after the adoption of administrative rules providing for the procedures for dispute resolution. Final administrative rules must be adopted by January 1, 1994." 1993 N.D. Sess. Laws Ch. 621 § 2. The reason for this "delayed implementation" was to "allow the Bureau time to adopt administrative rules without resulting in a backlog of cases while rules and procedures are being developed." House Bill No. 1138, Testimony of the Workers Compensation Bureau before the House Industry, Business and Labor Committee, January 27, 1993. Those rules were adopted effective January 1, 1994. *E.g.,* N.D. Adm.Code §§ 92-01-02-29.1 and 92-01-02-46.

■ Because all recommendations of HealthMarc, the managed care administrator, to deny payment in this case occurred before January 1, 1994, Vickery was not required to seek binding dispute resolution under N.D.C.C. § 65-02-20 on the payment question and we decide this appeal without further consideration of that section.

Under N.D.C.C. § 28-32-14(1), "[a]ny party before an administrative agency who is aggrieved by the final order of the agency, ... may file a petition for reconsideration with the agency." In *Little v. Tracy,* 497 N.W.2d 700, 702 (N.D.1993), we noted that North Dakota has employed a "factually aggrieved" standard, similar to the "injury-in-fact" standard employed in federal precedents on standing for appeal of adverse administrative decisions. *See also Pederson v. North Dakota Workers Compensation Bureau,* 534 N.W.2d 809 (N.D.1995); *Cass County Elec. Co-op., Inc. v. Northern States Power Co.,* 518 N.W.2d 216 (N.D.1994); *Application of Bank of Rhame,* 231 N.W.2d 801 (N.D.1975).

■ Thus, a party must be injured in some manner to have standing, *see Bernhardt v. Rummel,* 319 N.W.2d 159 (N.D. 1982), and "a nominal, formal, or technical interest in the action" will not suffice. *Associated General Contractors v. Local No. 580,* 278 N.W.2d 393, 397 (N.D.1979). The potential to be aggrieved is not the equivalent of being aggrieved in fact. *See Citizens State Bank of Neche v. Bank of Hamilton,* 238 N.W.2d 655 (N.D.1976). Rather, a party is factually aggrieved only "if a decision has enlarged or diminished that party's interest."

*Washburn Public School District No. 4 v. State Board of Public School Education,* 338 N.W.2d 664, 667 (N.D.1983). *See also Shark v. U.S. West Communications,* 545 N.W.2d 194 (N.D.1996); Annot., *Who is "party aggrieved," so as to be entitled to petition Court of Appeals for review of final order of administrative agency, under 28 USCS § 2344,* 88 A.L.R. Fed. 341, 346–347 (1988) [to have standing, party must have suffered injury-in-fact, economic or otherwise].

■ Vickery can claim no injury-in-fact in this case, according to the Bureau, because N.D.C.C. § 65–05–07(4) provides that "[h]ealth care providers or doctors may not bill injured workers for any services rendered as a result of the compensable work injury." The Bureau also relies on N.D.C.C. § 65–05–07(7), which provides that "the rendering of treatment to an injured worker who comes under the bureau's jurisdiction ... constitutes acceptance of the bureau's medical aid rules and compliance with its rules and fees." The Bureau asserts that Vickery lacks standing because these statutes insulate him from liability for payment of the medical services rendered. We disagree.

Both Vickery and the medical-service provider are in Alaska. There probably is no constitutional limitation on the power of the courts of one state to enforce the workers compensation laws of another state. *See Ray v. Aetna Casualty & Surety Co.,* 517 S.W.2d 194 (Tenn.1974). But the general rule is that courts of one state will not enforce the workers compensation laws of another jurisdiction, where the other state, like North Dakota, has provided a special tribunal or administrative agency to administer compensation claims. *See* 4 A. Larson, *The Law of Workmen's Compensation* § 84.20 (1995). *See also Bethlehem Steel Company v. Payne,* 183 So.2d 912 (Miss.1966) [Mississippi court would not apply provisions of North Dakota workers compensation law because system was administrative rather than judicial]. Alaska courts would be under no obligation to enforce N.D.C.C. § 65–05–07(4) and (7).

■ The Bureau also relies on Alaska Stat. § 23.30.095(f) (1995), which provides:

"(f) All fees and other charges for medical treatment or service shall be subject to regulation by the board but may not exceed usual, customary, and reasonable fees for the treatment or service in the community in which it is rendered, as determined by the board. *An employee may not be required to pay a fee or charge for medical treatment or service."* (Emphasis added).

But, by necessary implication from the first sentence of the statute, the medical services referred to are those subject to regulation by the Alaska Workers Compensation Board. Vickery's benefits are governed by the North Dakota workers compensation laws, not the laws of Alaska's compensation system. The Bureau's argument might have more force if Vickery and the medical provider were in North Dakota. *See Long Grove Builders, Inc. v. Haun,* 508 So.2d 476 (Fla. Ct.App.1987). However, in this case, the statutes the Bureau relies on may not insulate Vickery from liability for payment of the disputed medical services.

■ Nevertheless, we agree with the Bureau that, under the circumstances, Vickery lacks standing to challenge the Bureau's denial of payment for the CT scan and myelogram. Vickery has received the CT scan and myelogram. Vickery has not shown that he was personally billed for those services. Nor has he shown that he has since been denied any medical services whatsoever as the result of the Bureau's refusal to pay ADIC's claim. Rather, Vickery claims only that "[i]t is axiomatic that most medical providers, particularly out-of-state providers such as [ADIC] ... will simply bill the Claimant directly or discontinue treatment rather than subject themselves to the Bureau's labyrinthine review process." Vickery's argument alleges the potential of injury rather than injury-in-fact.

This case has some similarities to *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), in which the United States Supreme Court ruled the respondents, low-income individuals and organizations representing them, did not have standing to challenge an Internal Revenue Service revenue ruling

which extended favorable tax treatment to nonprofit hospitals that did not offer full service to indigents. The Supreme Court reasoned:

"The complaint here alleged only that petitioners, by the adoption of Revenue Ruling 69–545, had 'encouraged' hospitals to deny services to indigents. The implicit corollary of this allegation is that a grant of respondents' requested relief, resulting in a requirement that all hospitals serve indigents as a condition to favorable tax treatment, would 'discourage' hospitals from denying their services to respondents. But it does not follow from the allegation and its corollary that the denial of access to hospital services in fact results from petitioners' new Ruling, or that a court-ordered return by petitioners to their previous policy would result in these respondents' receiving the hospital services they desire. It is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications."

*Simon,* 426 U.S. at 42–43, 96 S.Ct. at 1926 (footnote omitted). *See also Warth v. Seldin,* 422 U.S. 490, 507, 95 S.Ct. 2197, 2209–2210, 45 L.Ed.2d 343 (1975) [petitioners' reliance "on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise, and might improve were the court to afford relief" insufficient to confer standing].

Here, Vickery similarly relies on remote possibilities and speculation of economic harm and harm to his well being in an attempt to establish injury-in-fact. Because Vickery has shown neither that he has been charged for payment of the CT scan and myelogram, nor that he has been denied any medical services because of the Bureau's refusal to pay ADIC's claim, we conclude that Vickery lacked standing to challenge the Bureau's denial of payment.

The district court order affirming the Bureau's decision is affirmed.

SANDSTROM, NEUMANN and MESCHKE, JJ., and LEVINE, Surrogate Judge, concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.