**Douglas SWANSON, Claimant and Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant,**

and

**Rockwell International, Respondent.**

**Civil No. 950416.**

Supreme Court of North Dakota.

Sept. 10, 1996.

---

Stephen D. Little (argued), Dietz & Little, Bismarck, for claimant and appellee.

Lawrence A. Dopson (argued), Special Assistant Attorney General, of Zuger Kirmis & Smith, Bismarck, for appellant.

NEUMANN, Justice.

The Workers Compensation Bureau appealed a district court judgment remanding the Bureau's order denying specific benefits to Douglas Swanson. Because the only issue decided is the narrow one of Swanson's standing, we reverse and remand for entry of a judgment affirming the Bureau's order, but without prejudice to Swanson's underlying claim.

Swanson sustained a work-related back injury in 1980. The Bureau accepted liability and paid benefits. By orders of January 13, February 28, and October 31, 1994, the Bureau denied specific medical benefits, ruling it was not liable for further payments for chiropractic care, vision problems and foot problems. Swanson requested a rehearing.

The Bureau conducted a hearing on November 17, 1994. At that proceeding the hearing officer stated:

"The issues to be considered at this hearing are whether the claimant is entitled to payment of past and ongoing chiropractic care and whether the claimant's vision and bilateral foot problems are related to his July 21, 1980 injury to the low back."

In his opening statement in the Bureau hearing, Swanson's attorney framed the issue more narrowly:

"Yes. Thank you. I believe that you correctly identified the issues which are the subject of this hearing. I would like to point out that certainly in terms of the reasonableness of any chiropractic care, Section 65–05–07, Subsection 3, of the Century Code states and I'll read it. 'The Bureau in cooperation with professional organizations of doctors and health care providers shall establish a system of peer review to determine the reasonableness of fees and payment denials for unjustified treatments, hospitalizations or visits.' I don't believe there's any evidence that the Bureau has used a peer review panel in this case. Consequently, I don't believe that the reasonableness of Mr. Swanson's chiropractic treatment or the denial of payment for that treatment is properly the subject of this hearing."

After the hearing, the Bureau issued its findings, conclusions, and order affirming the previous denials of benefits.

The Bureau found:

"III.

"Dr. Lester began to treat claimant on July 21, 1980.... Treatments increased dramatically from February, 1988, onward. From January 1988 on claimant received 807 treatments.... Dr. Lester agrees that ongoing chiropractic care is simply palliative and does not result in any long term cure to Swanson.

\*     \*     \*     \*     \*     \*

"VII.

"On August 7, 1992, Workers Compensation/Casualty Services (WCCS) recommended no further chiropractic care beyond three more treatments. Dr. Julie Bryant who was then treating claimant contacted WCCS about the recommendation ... and on January 27, 1993, the adviser recommended an additional three visits, one per month, with no further care after April 25, 1993. WCCS is an organization with whom the Bureau contracts to provide medical recommendations. I find that this review does constitute a form of peer review under N.D.C.C. § 65–05–07.

"VIII.

"... [O]n September 9, 1993, the Bureau ordered claimant to attend an independent examination with Dr. Paul Davis, D.C. ... Dr. Davis concluded that since spinal therapies are directed at restoring mobility and function and Swanson did not show any improvement, the treatment was not 'even reasonably effective.' ... Further, Dr. Davis opined that ongoing chiropractic care is likely counterproductive in the long run as it habituates Swanson to chiropractic care but does not provide long term relief. ... Dr. Davis' examination also constitutes peer review under N.D.C.C. § 65–05–07."

The Bureau concluded that Swanson "failed to prove entitlement to ongoing chiropractic care to treat the back injury" (Conclusion II); that "[t]he Bureau has afforded Swanson peer review as required under N.D.C.C. § 65–05–07" (Conclusion III); and that Swanson failed to prove his vision and foot problems were related to his back injury (Conclusions IV and V).

Swanson appealed to the district court. In his notice of appeal from the Bureau to the district court, Swanson limited himself to a single issue:

"Specifically, Findings of Fact VII and VIII are not supported by the evidence and Conclusion of Law III is not supported by the Findings [of] Fact in that the Bureau has not established a peer review

system pursuant to Section 65–05–07(3), N.D.C.C."

As the district court said, the sole issue presented to it was "whether the Bureau has complied with the requirements of N.D.C.C. Section 65–05–07(3) in denying Swanson further chiropractic treatment." The district court found "[t]he Bureau has not implemented the peer-review procedure required by N.D.C.C. Section 65–05–07(3)" and concluded "[t]he Bureau's use of WCCS and independent medical evaluations by doctors chosen by the Bureau does not satisfy the requirements of N.D.C.C. Section 65–05–07(3)." The court further concluded "[t]he Bureau was without authority to deny Swanson's chiropractic treatment without affording him the peer-review provided by N.D.C.C. Section 65–05–07," and reversed "that portion of the Bureau's Order denying further chiropractic treatment." The Bureau appealed from the judgment.

In its brief on appeal, the Bureau stated the issue to be: "Is the North Dakota Workers Compensation Bureau required to reimburse claimant Douglas Swanson for the cost of chiropractic treatments after April 24, 1993?" However Swanson, as he has throughout all of these proceedings, stated a narrower issue, tied to peer review: "This appeal revolves around a single legal question: Has the Bureau complied with the requirements of Section 65–05–07(3), N.D.C.C., in denying Doug Swanson further chiropractic treatment?" Thus, as in the previous proceedings, the sole issue presented by the parties in this appeal is whether the Bureau complied with the § 65–05–07(3), N.D.C.C., requirement for peer review. The larger question, whether the Bureau should be liable for further payments for Swanson's chiropractic care, vision problems and foot problems, has not been raised or preserved by Swanson, and is not presented here for our consideration.

■ The interpretation of a statute is a question of law, fully reviewable by this court. *Adams County Record v. Greater North Dakota Ass'n,* 529 N.W.2d 830 (N.D. 1995). "When interpreting a statute, our primary purpose is to ascertain the intent of

the legislature." *Id.* at 833. Section 65–05–07(3), N.D.C.C.,[1] provides:

"The bureau, in cooperation with professional organizations of doctors and health care providers, shall establish a system of peer review to determine reasonableness of fees and payment denials for unjustified treatments, hospitalization, or visits. The doctor or health care provider shall have the right to appeal adverse decisions of the bureau in accordance with the medical aid rules adopted by the bureau."

Under the statute, only doctors or health care providers may appeal adverse Bureau decisions on "reasonableness of fees and payment denials for unjustified treatments." The statute does not allow claimants to appeal adverse Bureau decisions on those matters and there is no indication the legislature intended the statute to benefit claimants in any way. Swanson is not an intended beneficiary of § 65–05–07(3), N.D.C.C.

We conclude Swanson did not have standing to challenge the Bureau's claimed lack of a peer review system. *See Vickery v. North Dakota Workers Compensation Bureau,* 545 N.W.2d 781, 785 (N.D.1996). The district court, therefore, erred in reversing the Bureau's order and in ordering the Bureau to pay for "Swanson's chiropractic treatment received to date and until such time as the Bureau implements a peer-review system pursuant to N.D.C.C. Section 65–05–07(3)."

The district court judgment is reversed and the matter is remanded for entry of a judgment affirming the Bureau's order, but without prejudice to Swanson's underlying claim.

VANDE WALLE, C.J., and SANDSTROM J., concur.

MESCHKE, Justice, dissenting.

The majority concludes Swanson has no standing to challenge the Bureau's lack of compliance with statutorily directed procedures that affect the claimant's rights. Be-

cause I believe the majority is wrong, I respectfully dissent.

The majority correctly describes how this question has been developed, but refuses to decide Swanson's specific question whether "the Bureau's practice of relying on its consultant's recommendations [or] its practice of picking and choosing adverse medical opinions constitutes an established 'system of peer review in cooperation with professional organizations of doctors and health care providers'" that is required by law.

Swanson was denied more chiropractic care for his 1980 back injury after April 25, 1993, because Workers Compensation/Casualty Services (WCCS) recommended the cessation of chiropractic care and an independent chiropractic examiner advised the Bureau further treatment was not "reasonably effective" to restore mobility and function. Both recommendations were made disregarding any need for palliative relief from pain. The Bureau expressly decided that WCCS's and the independent examiner's recommendations were a "form of peer review" under NDCC 65–05–07, a legal conclusion that Swanson contested without developing independent medical evidence. The majority decides the judicial branch should not review the Bureau's decision about what constitutes "peer review," and so reverses the district court's conclusion that the "Bureau has not implemented the peer-review procedure required by N.D.C.C. Section 65–05–07(3)."

The majority interprets the statute to "not allow claimants to appeal adverse Bureau decisions on those matters" of "payment denials for unjustified treatments" by a "doctor or health care provider." The claimant becomes the forgotten figure—his well-being may be affected by a workplace injury, but he has no way to do anything about it. Really, in this context of a dwindling compensation program that litigates more than compensates, a health care provider can question the lack of compensation for treatment but the person treated cannot? Orwellian!

---

1. The Bureau adopted regulations, effective January 1, 1994, providing for peer review. *See*

N.D.A.C. § 92–01–02–47.

A claimant is specifically entitled to appeal *any* adverse decision by the Bureau. NDCC 65–10–01 directs that, "... if the bureau allows the claimant to participate in the fund to a lesser degree than that claimed by the claimant, if such allowance is less than the maximum allowance provided by this title, the claimant may appeal...." Nothing in NDCC 65–05–07 suggests repeal or reduction of a claimant's entitlement to judicial review. Under NDCC 1–02–07, a primary rule of statutory interpretation instructs us to construe related statutes to give full effect to each, rather than as conflicting or meaningless. *See also* NDCC 1–02–38: "[I]t is presumed that: ... 2. The entire statute is intended to be effective." Also, as *Birst v. Sanstead*, 493 N.W.2d 690, 694–95 (N.D.1992) elaborates, an implied repeal of an existing statute is disfavored.

The Bureau's regulations on "medical services disputes," as amended effective January 1, 1994, purports to implement a "peer review system." NDAC 92–01–02–47. Its companion procedural rule expressly recognizes the claimant's standing as an aggrieved party for review of an adverse decision:

> An aggrieved party is an employee, employer, or health care provider who raises a bona fide dispute.

NDAC 92–01–02–46(3). Further:

> Any dispute that is solely a question of law is not subject to binding dispute resolution under this section. In such case, the bureau shall issue an administrative order. The sole remedy for an aggrieved party is appeal to the appropriate district court. A fact hearing may not be conducted in such case, absent order of a court.

NDAC 92–01–02–46(5)(c). I believe that this regulatory framework firmly fixes a claimant's right to judicial review of the agency's compliance with the peer review law.

Generally, an aggrieved party is entitled to judicial review of agency action. NDCC 28–32–15(1). As we pointed out in *Shark v. U.S. West Communications, Inc.*, 545 N.W.2d 194, 198 (N.D.1996):

> The over-arching concept of standing for justiciability has been explained by this court:

The question of standing focuses upon whether the litigant is entitled to have the court decide the merits of the dispute. It is founded in concern about the proper—and properly limited—role of the courts in a democratic society. Without the limitation of the standing requirements, the courts would be called upon to decide purely abstract questions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf. The inquiry is two-fold. First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. Secondly, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties.

*State v. Carpenter*, 301 N.W.2d 106, 107 (N.D.1980) (citations omitted); *see also Application of Otter Tail Power Co.*, 451 N.W.2d 95, 98 (N.D.1990) (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978)) ("The reasons for this limitation on standing are 'the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.' ").

Swanson is certainly the most effective advocate on whether appropriate peer review affecting his health has taken place.

In this case, the majority makes little or no effort to square its lack-of-standing conclusion with our existing standing jurisprudence. Unlike the situation in *Vickery v. North Dakota Workers Compensation Bureau*, 545 N.W.2d 781 (N.D.1996), which the majority refers to, Swanson has been denied health care services here as a result of the Bureau's refusal to pay for peer review reasons. Vickery only feared a potential denial of services; Swanson has been denied ser-

vices. I believe, therefore, the majority incorrectly uses the standing doctrine to dodge a difficult subject.

I share some of the majority's hesitancy. I, too, doubt that the judicial branch can decide how "a system of peer review" should be established by the Bureau "in cooperation with professional organizations of doctors and healthcare providers." The exact shape of a system of peer review is beyond the province of judges. In keeping with the constitutional separation of the judicial power from the executive power, the courts should not try to define exactly what a "system of peer review" is. Just as with many other responsibilities of an administrative agency, there is a potentially wide range of allowable executive action.

Still, as the district court recognized, the judicial branch has the duty to decide whether agency action complies with the law. *See* NDCC 28–32–19: ". . . the court must affirm the order of the agency unless it shall find that any of the following are present: 1. The order is not in accordance with the law. . . . 4. The rules or procedure of the agency have not afforded the appellant a fair hearing." *Little v. Tracy,* 497 N.W.2d 700, 704 (N.D.1993) (quoting *Moore v. North Dakota Workmen's Compensation Bureau,* 374 N.W.2d 71, 74 (N.D.1985)), summarizes the concept: "It is a basic rule of administrative law that an administrative regulation may not exceed statutory authority or supersede a statute, and that a regulation which goes beyond what the Legislature has authorized is void."

Here, the district court reasoned:

The record does not disclose what efforts have been made by the Bureau to establish the system of peer review in cooperation with professional organizations of doctors and healthcare providers. There is no evidence in the record that the Bureau contacted or collaborated with North Dakota professional organizations of doctors and health care providers about the system. While the Court does not rule out the possibility that documentation of such collaboration may exist, given that compliance with § 65–05–07(3) is the sole issue on this

appeal, . . . the inference can be drawn that such collaboration never took place.

\*   \*   \*   \*   \*   \*

The legislature directed the Bureau to establish a mechanism or system for peer review. A "system" implies something more than the opinion of a doctor handpicked by the Bureau. At least, Dr. Laskowski [, appearing before a legislative committee for the Bureau to endorse the enactment of NDCC 65–05–07(3),] contemplated a peer-review committee, rather than a review by a single professional or even a series of reviews by single professionals.

Bearing in mind that it was the unilateral nature of the reviews desired by the Bureau, but rejected by the legislature, which led to the adoption of N.D.C.C. Section 65–05–07(3) in the first place, it defies logic that WCCS is the "system" mandated by the legislature.

Because I agree with this reasoning and with the district court's conclusion that "the process involved" in denying Swanson's claim "was flawed," and thus does not comply with the law, I would affirm the district court's order reversing denial of Swanson's claim and remanding to the Bureau for further proceedings consistent with the Bureau's statutory duty to implement a system of peer review in cooperation with North Dakota professional organizations.

Therefore, I respectfully dissent.

MARING, J., concurs.