Lloyd HUBER, John Weber, Albert Huber, Paul Orso, Reinhold Bauer, Albert Bauer, Oswald Goetz, Ben Gerving, Otto Lennick, Paul Breimeier, George Doll, George Hoffman, and Gordon Gappert, Plaintiffs and Respondents,

v.

Lloyd MILLER, William Van Oosting, and Norman Jacobson, as County Commissioners of the County of Oliver; Emil Reiner, as County Auditor for the County of Oliver; Arthur H. Isaak, as Treasurer for the County of Oliver; and Oliver County, a Public Corporation, Defendants and Appellants.

OLIVER COUNTY, a Public Corporation, With its County Seat at Center, North Dakota, Plaintiff and Respondent,

v.

William VAN OOSTING, Norman Jacobson, and Lloyd Miller, as Commissioners of Oliver County, and Individually, Defendants and Appellants.

Nos. 7828, 7829.

Supreme Court of North Dakota.

Jan. 22, 1960.

Burton S. Wilcox, State's Atty., Center, and Floyd B. Sperry, Bismarck, for defendants and appellants.

Lord, Ulmer, Bair & Daner, Mandan, for plaintiffs and respondents.

STRUTZ, Judge (On reassignment).

The first-entitled action, hereinafter referred to as the "injunction action," is an action for an injunction brought by the plaintiffs as resident taxpayers of ·Oliver County against the defendants as county commissioners of Oliver County, against the county auditor and the county treasurer, and against Oliver County, a public corporation, to restrain the county commissioners from disbursing funds derived from a levy made by the county commissioners under a farm-to-market and Federal-aid program provided for in Section 57–15063 of the 1953 Supplement to the North Dakota Revised Code of 1943. The action originally also was brought against the highway commissioner of the State of North Dakota, but was dismissed as to the highway commissioner by the trial court.

The second action, hereinafter referred to as the "appeal action," was an appeal by certain taxpayers of Oliver County from a resolution of the board of county commissioners, which resolution was approved by the board of county commissioners on March 4, 1958.

In 1954, the board of county commissioners of Oliver County prepared a proposed county road construction program of farm-to-market and Federal-aid roads on the county road system. In such proposed program, the county commissioners set forth a general description of the roads to be constructed as part of such program, as required by the county road program law. In the proposed. county construction program, the road in question in these two appeals was designated as "Priority No. 3, Fed.Aid Sec. No. 538." In that program the road in question was described as being proposed "From 7 miles west of Hannover south 9.1 miles to the County line."

After such proposed county construction program had been approved by the State Highway Department and the Federal Bureau of Public Roads, the board of county commissioners submitted the program to the electors of Oliver County together with the question of levying a tax of five mills on the net taxable assessed valuation of all property in the county, such levy to be in force until such proposed program should be completed. Such program was submitted to the electors of the county at a special election called for June 29, 1954, and was approved by a majority vote of the electors at such election.

Thereafter, petitions were presented to the board of county commissioners proposing that the road which had been designated as "Priority No. 3, Fed.Aid Sec. 538," which had been described in said program and on the ballot submitted to the voters as "From 7 miles west of Hannover south 9.1 miles to the County line," be changed to a location nine miles west of Hannover, thence south eight miles, thence east two miles, thence south one mile to the county line. Good reasons were given by the petitioners for the proposed change, among which was the claim that three times more people would be served at the new location than would be served if the road were built at the location described in the program and on the ballot, which location had been approved by the electors.

Upon receipt of such petitions, the board of county commissioners published a notice in the official county newspaper of Oliver County of a public hearing to be held before the board of county commissioners on the relocation of such road as proposed in the petitions, such notice urging all persons interested in the proposed road to attend the hearing and ·to present their views.

The meeting was held at the time and place fixed in the notice and was attended by a large number of interested persons. The majority of those attending the meeting appeared to be in favor of the new location as requested in such petitions, though no formal vote was taken.

After such hearing, the board of county commissioners passed the following resolution, which resolution was dated September 3, 1957, and was published in the official paper of Oliver County on September 5, 1957:

"The County farm to market and federal aid program priority No. 3 be changed from the general location given on the ballot to the specific location as follows:

"Beginning nine (9) miles west of Hannover, thence south eight (8) miles, thence east two (2) miles, thence south to Morton County Line and that said road be next road to be built under federal aid farm to market program."

On the same day, September 3, 1957, the board of county commissioners passed a resolution authorizing the chairman of the board to sign an agreement on behalf of Oliver County for the construction of such highway at the location as provided for in the above resolution. The resolution authorizing such signing of an agreement was also published in the official newspaper of Oliver County on October 3, 1957.

The plaintiffs, as resident taxpayers of Oliver County, commenced an action to enjoin the expenditure of any monies raised by such tax levy for building a road at the point described in the resolution, which road would be two miles west of the road as it was described in the proposed county construction program of farm-to-market and Federal-aid roads and in the ballot which had approved the building of such road. The summons and complaint in the injunction action were placed in the hands of the sheriff of Oliver County on October 5, 1957, and were served by the sheriff on the defendants as members of the board of county commissioners, on the defendant county auditor, and on the defendant county treasurer on the 7th day of October 1957. No appeal was taken from the resolution of the board of county commissioners, which resolution was dated September 3, 1957.

After the service of such summons and complaint in the injunction action, the defendant board of county commissioners again considered this matter, without any notice of a public hearing and not at a regular meeting. On October 21, 1957, the board of county commissioners passed a further resolution, again changing the location of said road from the point commencing nine miles west of Hannover, as had been provided in the resolution of September 3, 1957, and placing the location of the road at its original site commencing seven miles west of the town of Hannover. Such resolution, of October 21, 1957, was conditioned, however, upon the giving of easements for right of way by all landowners along the proposed route, commencing seven miles west of Hannover. Such easements were not given.

Thereafter, on March 4, 1958, the easements not having been executed by the landowners along the seven-mile route, the board of county commissioners passed a resolution rescinding their action of October 21, 1957, and reinstating the location of such proposed highway at the point commencing nine miles west of Hannover. The second appeal before this court, herein referred to as the "appeal action," is an appeal from such resolution of the board of county commissioners of March 4, 1958.

The first question to be determined is whether the plaintiffs had the right to appeal from the decision of the board of county commissioners changing the location of the proposed road from a point commencing seven miles west of Hannover to a point commencing nine miles west of that place, for if the plaintiffs had a right

to appeal from such decision, as the appellants vigorously contend, they had a legal remedy and an injunction suit will not lie. This court has held that an injunction will not issue where legal remedies are or have been available. Fish v. France, 71 N.D. 499, 2 N.W.2d 537; Bismarck Water Supply Co. v. Barnes, 30 N.D. 555, 153 N.W. 454, L.R.A.1916A, 965.

Section 11-1139 of the North Dakota Revised Code of 1943 provides:

"An appeal may be taken to the district court from any decision of the board of county commissioners by any person aggrieved thereby. * * *"

█ The plaintiffs, as resident taxpayers, certainly were dissatisfied with the decision of the board of county commissioners in changing the location of the road. But mere dissatisfaction or displeasure of an individual with a decision of the board of county commissioners is not enough to give such individual a right of appeal from such decision. No board of county commissioners would ever be able to please all of the persons residing within any county on any question, and if every elector and taxpayer who is dissatisfied could appeal to the district court from every decision of the board that he did not agree with, the business of the county would be greatly inconvenienced. Political opponents of the members of the board would have the business of the county in constant litigation.

█ Under the statute giving to "any person aggrieved" the right to appeal from such decision, such person must show a personal, individual interest in the decision, and any grievance which he might have suffered simply because he is an elector and taxpayer is not sufficient to give him the right to appeal. Holmes v. Miller, 71 S.D. 258, 23 N.W.2d 794.

The appellants cite the North Dakota cases of Semerad v. Dunn County, 35 N.D. 437, 160 N.W. 855, and Hulett v. Snook, 57 N.D. 338, 221 N.W. 879, in support of their contention that an appeal lies from the determination of the county commissioners as to the route chosen for a proposed highway. In the Semerad case, this court did hold that an appeal lies in North Dakota from the determination of a board of county commissioners as to the route to be taken in laying out a highway. But, in that case, the proposed route was laid out as a part of condemnation proceedings against the plaintiff's land. The plaintiff thus had a personal, peculiar, and individual interest in the decision of the board in laying out such proposed highway when his land was being taken. No such interest is shown to exist in the case here before the court. The only interest that the plaintiffs in this case have in the determination of the location of the proposed road is such interest as they have in common with other electors and taxpayers in the spending of the tax levies for such road. In the Hulett case, also relied upon by the appellants, the plaintiff's land was being taken by eminent domain for a township highway. An appeal actually was taken from a determination of the board of township supervisors locating such township highway, and the plaintiff participated in such appeal. After an adverse decision of the district court, the plaintiff brought an injunctional proceeding, contending that the order of the township supervisors had been erroneously appealed and that actually such order was not appealable. This court in that case said that, after trial on such appeal from the order of the township supervisors had been completed and the verdict returned, the plaintiff could not be heard to say that no valid appeal was taken from the decision of the township supervisors.

█ In order to be entitled to appeal as an aggrieved person, the party must have some legal interest that may be enlarged or diminished by the decision to be appealed from. In other words, such party must be injuriously affected by the decision. Roosma v. Moots, 62 Idaho 450, 112 P.2d 1000, 1002.

Thus the plaintiffs had no right to appeal from the decision of the board of county commissioners merely by reason of the fact that they were electors and taxpayers. To be authorized to appeal from such decision they would be required to show an individual and a personal interest in the decision apart from their interest as electors and taxpayers.

The next question to be determined is whether an injunction will lie to enjoin the board of county commissioners from changing the location of the highway designated in the proposed county construction program and on the ballot submitted to the electors as Priority No. 3. Clearly, if such change was within the power and the discretion of the board, no injunction would lie to enjoin its action.

Generally, a resident taxpayer has the right to bring an action in his own name and on behalf of all other taxpayers to enjoin the unlawful disposition of public funds, and he is not required to show any interest other than that which he has as a taxpayer. Green v. Beste, N.D., 76 N.W.2d 165; Lang v. City of Cavalier, 59 N.D. 75, 228 N.W. 819; Anderson v. Jeannotte, N.D., 96 N.W.2d 591.

The County's share of the money to pay for such farm-to-market road program was to be raised by the levy authorized by the voters in the election approving the program. The use of funds to carry out such program, which the voters had thus authorized, would have to be in accordance with the program which the electors had approved at such election. In determining whether the proposed change of location "From 7 miles west of Hannover south 9.1 miles to the County line" to a location described as "Beginning nine (9) miles west of Hannover, thence south eight (8) miles, thence east two (2) miles, thence south to Morton County Line and that said road be next road to be built under federal aid farm to market program," is in accordance with the program which the electors had ap-

proved, we will consider the provisions of the law under which this program was proposed.

Section 57–15063 of the 1953 Supplement to the North Dakota Revised Code of 1943 is the law under which this program was proposed. That section provides in part as follows:

"57–15063. County Road Program Including Farm to Market And Federal Aid; Tax Levy. The board of county commissioners of any county in this state may prepare a proposed county construction program of farm-to-market and federal aid roads on the county road system, setting forth a general description of the roads to be constructed, the location of bridges constituting a part of the program, the approximate total mileage, and the priority of construction. After approval of such program by the department and the bureau of public roads, the board may submit such program to the electors of the county with the question of levying a tax of not to exceed five mills upon the net taxable assessed valuation of all property in the county for the completion of such program by matching, * * * If the majority of the electors voting on the question approve such program and levy, annually thereafter until such program is completed the board shall levy a tax not in excess of five mills, which levy shall not be subject to the county mill levy limitations, and the proceeds of such tax shall be used only for matching federal aid available for such program which shall be the official county road program."

The appellants stress that the construction program of farm-to-market roads and Federal-aid roads proposed by the county commissioners need set forth only "a general description of the roads to be constructed," and that the description of the road in question, as it appeared in the proposed construction program and on the

ballot submitted to the electors, as being located "From 7 miles west of Hannover south 9.1 miles to the County line," is only a general description. Appellants further contend that the county commissioners, in adopting their resolution of September 3, 1957, changing the location of this road from the general location described in the proposed program and on the ballot to the specific location fixed in the resolution of September 3, 1957, were acting within their authority. That resolution provided: "The County farm to market and federal aid program priority No. 3 be changed from the general location given on the ballot to the specific location as follows:

"Beginning nine (9) miles west of Hannover, thence south eight (8) miles, thence east two (2) miles, thence south to Morton County Line."

█ The county commissioners have the power, generally, to open, lay out, vacate, and change highways in cases provided by law. Sec. 11–1114, N.D.R.C.1943. Thus, if this road were to be built with general funds of the County, the county commissioners would have the authority to change the location from a point commencing seven miles west of Hannover to a point commencing nine miles west. But here the electors had voted upon the proposed county construction program of farm-to-market roads. The levy which they had approved was to be used only in carrying out the program which had been approved, since the law specifically provided " * * * the proceeds of such tax shall be used only * * * for such program which shall be the official county road program."

█ It is true that the statute authorizing the adoption of such proposed road construction program, and the levy to pay for it, requires only a general description of the road to be constructed. We must assume that the description "From 7 miles west * * *" is such a general description. Would the county commissioners have authority to change the location by moving the road two miles west of such general description given on the proposed program and on the ballot?

█ The word "general," according to Webster's dictionary, means "not specific" or "not entering into details." The county road program law, by providing that the county commissioners may prepare a proposed road program "setting forth a general description of the roads to be constructed," merely provides that it would not be necessary for the county commissioners to give a detailed metes-and-bounds description of the road to be constructed, but that a general description of the location of such road would be sufficient. However, having submitted the program with such general description to the electors, together with a proposed tax levy of five mills to pay for its construction, a substantial compliance of the proposed program must be made. The proceeds of such levy must be used for the particular purpose authorized by the voters. Using the proceeds of such levy for any other purpose would be an unlawful and wrongful diversion of tax monies raised by such levy.

█ We are of the opinion that a general description of "From 7 miles west of Hannover south 9.1 miles to the County line" would not permit the construction of a road at a location described as "Beginning nine (9) miles west of Hannover, thence south eight (8) miles, thence east two (2) miles, thence south to Morton County Line." The road described as "Beginning nine (9) miles west of Hannover, * * *" would be an entirely new and different road. Harding v. Board of Supervisors of Osceola County, 213 Iowa 560, 237 N.W. 625.

In that case, the electors of Osceola County authorized a bond issue at an election at which such bonds were proposed to be issued for the improvement of "primary roads of the county." Subsequent to the election and the approval of the issuance of such bonds, the board of county supervisors attempted to relocate a portion of

the primary road system, as it existed at the time of the election, by moving a 12-mile strip of such primary road a distance of two miles from the road as it existed at the time of the election. The Supreme Court of Iowa held that expenditure of such funds for a road located two miles from the road as it existed at the time of the election was unauthorized, and such expenditure was enjoined as an unlawful diversion of public funds.

Had the change in location in the case here before the court been a minor change, such as might be necessary in order to avoid some difficult terrain, but had the road remained generally in the same location, there would have been a substantial compliance with the "general description of the roads to be constructed," as that was set forth in the construction program and as described on the ballot. However, a change of location of practically the entire road designated as Priority No. 3, to a point two miles distant from the location described in the program and from the location voted upon by the electors, cannot be said to be a compliance with the location called for in the general description of the road set forth in the proposed construction program and in the description as it was found on the ballot by which the electors approved such program.

The appellants cite the case of Wood v. Bangs, 1 Dak. 179, 46 N.W. 586, in support of their contention that no injunction will lie to enjoin the board of county commissioners from changing the location of the highway as provided in their resolution of September 3, 1954.

In the Wood case, which was decided in 1875 by the Territorial Supreme Court, the statute gave to the board of county commissioners the authority and the power to erect a courthouse. The board of county commissioners, acting under this law, awarded a contract for a new courthouse after having advertised for bids, such call for bids specifically setting forth that the contract would be paid for by county warrants. The

law further provided that the question of whether a courthouse should be erected should first be submitted to the electors for approval, and this was not done. After the contract had been awarded and all of the materials furnished and the work on the courthouse completed, the plaintiffs, as resident taxpayers, attempted to enjoin the payment of the county warrants which had been issued in payment of such contract. The evidence disclosed that the warrants, at the time, were worth only fifty cents on the dollar.

The Supreme Court held in the Wood case that an injunction would not lie after materials had been furnished and the work was completed, pointing out that an injunction will never be granted when it will produce hardship or injury. It certainly would have been inequitable for the plaintiffs to wait until the materials were furnished and the contract completed before raising the question of illegality of the contracts and then, by their action, deprive the defendants of payment.

The court did go on to point out that the plaintiffs had a right of appeal from the decisions awarding the contract if they were aggrieved thereby. Insofar as the case of Wood v. Bangs might stand for the principle that a resident taxpayer has the right of appeal from all decisions of the board of county commissioners, that case, which was decided eighty-five years ago, is overruled. At the time of the Wood decision, the business of the county commissioners was very limited. Today, if every decision were to be subject to an appeal by any person who is a resident and taxpayer in the county who is dissatisfied with the commission's action, such rule would place an intolerable burden on the work and the business of the county commissioners and would obstruct progress. Surely, the better rule is that such appeals be limited to those of persons who are aggrieved by the decisions of the board of county commissioners because of some personal or individual interest in such decisions.

Having decided that the injunction will lie against the changing of the location of the proposed road designated as Priority No. 3, the decision of the district court in the injunction case is affirmed.

Since all of the issues in the appeal case are disposed of by the decision in the injunction action, and since we hold in the injunction action that an appellant must show a personal or individual interest in the decision of the board of county commissioners in order to maintain an appeal, and no such interest having been shown in this case, the judgment in the appeal action is set aside and the appeal is ordered dismissed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.