*2017 ND 120*

Donald Robert **COSSETTE**, individually, and Donald Robert Cossette and Marjorie Cossette as Co–Trustees of the Angela R. Cossette Revocable Living Trust dated November 21, 2002, Plaintiffs and Appellants

v.

**CASS COUNTY JOINT WATER RESOURCE DISTRICT,** Defendant and Appellee

No. 20160311

Supreme Court of North Dakota.

Filed 5/16/2017

Rehearing Denied 6/7/2017

Jonathan T. Garaas, Fargo, N.D., for plaintiffs and appellants.

Christopher M. McShane, West Fargo, N.D., for defendant and appellee.

Crothers, Justice.

[¶ 1] Donald Cossette and the Angela R. Cossette Revocable Living Trust appeal a district court order dismissing their complaint against the Cass County Joint Water Resource District. The Cossettes requested declaratory relief and appealed from the District's resolution of necessity relating to the District's intent to acquire an interest in the Cossettes' real property through eminent domain. We affirm that part of the district court order dismissing the Cossettes' request for declaratory relief. We reverse that part of the district court order concluding the Cossettes were not entitled to appeal the District's resolution of necessity, and remand.

I

[¶ 2] Red River Valley governmental authorities, including the District, designed a flood control and protection project referred to as the Diversion Project. The District is responsible for obtaining property rights in North Dakota necessary for the Diversion Project. The Cossettes own approximately eighty acres of farmland in the Red River Valley. Representatives acting on behalf of the District notified the Cossettes in January 2016 that their property may be affected by the Diversion Project and "that some type of easement rights may be necessary." The Cossettes also were notified their property would be inspected by an appraisal company. In March 2016 the District notified the Cossettes it would "be acquiring your property ... for the proposed construction of the [Diversion Project]," and offered to purchase the property for $476,040. The Cossettes rejected the District's offer.

[¶ 3] In May 2016 the District passed a resolution of necessity determining the Cossettes' property was necessary for the Diversion Project and the District intended "to acquire a Permanent Right of Way Easement over, across, and through the [Cossettes'] Property." The resolution also indicated the District "will proceed with the requisite legal proceedings as necessary ... to acquire a Permanent Right of Way Easement over, across, and through the Property."

[¶ 4] After the District passed the resolution of necessity the Cossettes sued the

District seeking a declaration that the District acted inappropriately in passing the resolution of necessity. The Cossettes' complaint also appealed the District's resolution of necessity to the district court, claiming the resolution was based on false representations and was passed without legal authority.

[¶ 5] The District moved to dismiss the Cossettes' complaint, arguing their request for declaratory relief was improper because it cannot be combined with an appeal from the District's resolution of necessity. The District also argued the resolution of necessity was not appealable because the Cossettes were not aggrieved by the resolution. The district court agreed and issued an order dismissing the Cossettes' complaint.

## II

[¶ 6] The district court dismissed the Cossettes' complaint under N.D.R.Civ.P. 12(b)(6). "A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)(vi) tests the legal sufficiency of the claim presented in the complaint." *Brandvold v. Lewis & Clark Pub. Sch. Dist.*, 2011 ND 185, ¶ 6, 803 N.W.2d 827 (quoting *Vandall v. Trinity Hosps.*, 2004 ND 47, ¶ 5, 676 N.W.2d 88). In reviewing an appeal from a Rule 12(b) dismissal, the complaint is construed in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint. *Brandvold*, at ¶ 6. Dismissal of a complaint under N.D.R.Civ.P. 12(b)(6) is reviewed de novo. *Brandvold*, at ¶ 6.

## III

[¶ 7] The Cossettes argue the district court erred in dismissing its complaint requesting a declaratory judgment against the District. The Cossettes sought declaratory relief and to appeal from the District's resolution of necessity. The court

dismissed the Cossettes' request for declaratory relief, concluding their "attempt to assert an equitable remedy with their administrative appeal is inappropriate." We agree.

[¶ 8] In *Anderson v. Richland Cty. Water Res. Bd.*, 506 N.W.2d 362, 364 (N.D. 1993), a group of landowners appealed the Richland County Water Resource Board's administrative order relating to assessments and also brought a separate action in district court seeking declaratory relief. The court consolidated the cases, denied the landowners' request for declaratory relief and affirmed the Water Board's administrative order. *Id.* at 364–65. Before addressing the issues raised on appeal this Court stated: "We note that the . . . landowners' declaratory judgment action was inappropriate because N.D.C.C. § 28–34–01 'governs any appeal . . . from the decision of a local governing body.' Therefore, we review only the appeal from the decision of the political subdivision." *Anderson*, at 365. *See also Hector v. City of Fargo*, 2014 ND 53, ¶ 23, 844 N.W.2d 542 ("a statutory appeal provides an adequate legal remedy for reviewing a local governing body's decision, and in those cases where an appeal is authorized by law, an action for equitable relief generally is not available").

[¶ 9] Here, similar to *Anderson*, the Cossettes' lawsuit sought declaratory relief and to appeal from the District's resolution of necessity. The district court correctly decided the Cossettes' attempt to seek declaratory relief was inappropriate. We affirm that part of the court's order dismissing the Cossettes' complaint relating to their request for declaratory relief.

## IV

[¶ 10] The Cossettes argue the district court erred in dismissing their appeal from the District's resolution of necessity.

[¶ 11] Chapter 61–16.1, N.D.C.C., governs water resource districts. Under N.D.C.C. § 61–16.1-54, an appeal may be taken "from any order or decision of the water resource board by any person aggrieved." "The appeal must be taken to the district court of the county in which the land claimed to be affected adversely by the order or decision appealed from is located and is governed by the procedure provided in section 28–34–01." *Id.*

[¶ 12] The district court concluded that, under N.D.C.C. § 61–16.1-54, the Cossettes were not aggrieved by the resolution of necessity and could not appeal. The court stated the resolution "is only one of the steps taken toward eminent domain" and the Cossettes were only potentially aggrieved by the resolution. The court indicated the District subsequently began an eminent domain action against the Cossettes, and "[i]f the [Cossettes] are aggrieved by a taking, the issues that they raise here may be raised in that proceeding."

[¶ 13] The plain language of N.D.C.C. § 61–16.1-54 allows an aggrieved party to appeal from any order or decision of a water resource board; however, the statute does not define how one becomes "aggrieved." This Court has defined an aggrieved party in the context of appealing a judgment or order of the district court to the Supreme Court. *Treiber v. Citizens State Bank*, 1999 ND 130, ¶ 5, 598 N.W.2d 96. "An aggrieved party is one who has some legal interest that may be enlarged or diminished by the appealed decision." *Id.* "The party's interest must be immediately, directly, and adversely affected, and an effect that is contingent or indirect, or that results merely in some possible, remote consequence, is insufficient." *Id.* See also *Black's Law Dictionary* 1297 (10th

ed. 2014) ("aggrieved party" is "a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment").

[¶ 14] The district court dismissed the Cossettes' appeal from the resolution of necessity in part because the resolution "is only one of the steps taken toward eminent domain." Although a resolution of necessity is one part of the entire eminent domain process, N.D.C.C. § 61–16.1-54 allows an appeal from any water resource board order or decision relating to eminent domain.

[¶ 15] Here, the resolution of necessity provides the legal description of the Cossettes' property and states the property "is necessary for the construction, operation, and maintenance of the ... Diversion Project." The resolution further states that "the [District] will proceed with the requisite legal proceedings as necessary under Section 61–16.1-09(2) and Chapter 32–15 of the North Dakota Century Code to acquire a Permanent Right of Way Easement over, across, and through the Property." The resolution of necessity adversely affected the Cossettes' property rights by describing the Cossettes' property and stating the District will proceed with eminent domain to acquire an interest in the property. The Cossettes became aggrieved under N.D.C.C. § 61–16.1-54 upon the District's passage of the resolution of necessity indicating the District will acquire an interest in the Cossettes' property through eminent domain. We reverse that part of the district court's order dismissing the Cossettes' complaint appealing from the District's resolution of necessity. We remand for the court to address the issues raised in the Cossettes' appeal from the District's resolution of necessity.[1]

---

1. The Cossettes indicate the District failed to file the record relating to the resolution of necessity after the Cossettes appealed to the district court. On remand, the District must

## V

[¶ 16] We have considered the Cossettes' remaining arguments and conclude they are either unnecessary to our decision or without merit. We affirm that part of the district court order dismissing the Cossettes' request for declaratory relief. We reverse that part of the district court order concluding the Cossettes were not entitled to appeal the District's resolution of necessity, and remand.

[¶ 17] Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Tufte, Justice, concurring in part and dissenting in part.

[¶ 18] I concur with the portion of the majority opinion dismissing the Cossettes' request for declaratory relief. I respectfully dissent from that part reversing the district court on the issue of whether the Cossettes are "aggrieved" and thus entitled to appeal.

[¶ 19] Section 61–16.1–54, N.D.C.C., permits an appeal "to the district court from any order or decision of the water resource board by any person aggrieved." Because "aggrieved" is not a defined term, we interpret it in its ordinary sense. N.D.C.C. § 1–02–02. A dictionary frequently provides us with a reliable starting point in determining the ordinary meaning of a word we have not previously defined. To guard against linguistic drift, dictionaries close in time to the date of enactment are most helpful in determining the substantive meaning. *See Douville v. Pembina Cty. Water Res. Dist.*, 2000 ND 124, ¶ 10, 612 N.W.2d 270. Section 61–16.1–54 was enacted in 1981, with an amendment not relevant here in 1989. The most recent *Black's Law Dictionary*, cited by the majority for the definition of "aggrieved party," also defines "aggrieved" as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights." *Black's Law Dictionary* 79–80 (10th ed. 2014). The fifth edition was most current when the statute was enacted and similarly defines aggrieved in the past tense. *Black's Law Dictionary* 60 (5th ed. 1979) ("Having suffered loss or injury; damnified; injured."). Standard English dictionaries also provide definitions of "aggrieved" that are past-tense and backward-looking. *Webster's New World Dictionary* 26 (2d Coll. ed. 1980) ("1. having a grievance; offended; wronged 2. injured in one's legal rights."); *Webster's Third New International Dictionary* 41 (1971) ("2b: having a grievance; *specif*: suffering from an infringement or denial of legal rights"); *Random House Dictionary* 39 (2d ed. 1987) ("1. Wronged, offended, or injured"; "2. *Law.* deprived of legal rights or claims"; and "3. Troubled; worried; disturbed; unhappy."). Taken together, these definitions suggest that for a person to be "aggrieved," something must have already harmed, injured, adversely affected, or infringed that person's legal rights. One who faces a possibility of future harm or feels targeted for future harm may be aggrieved in the future, but is not yet aggrieved. The resolution of necessity had been approved at the time of the Cossettes' appeal. Thus, the question is whether the resolution is only a threat of future aggrievement or is it by itself sufficient to "aggrieve" the Cossettes. I would conclude the resolution is insufficient to "aggrieve."

[¶ 20] The broader statutory scheme of Chapter 61–16.1 supports this reading that the approval of a resolution of necessity is not sufficient to make an affected landowner "aggrieved." Section 61–16.1–54,

prepare and file the record as required under N.D.C.C. § 28–34–01(2).

N.D.C.C., tells us *what* decisions of a water resource board may be appealed and *who* may take an appeal. What may be appealed is broad: "any order or decision of the water resource board." Who may appeal is also broad: "any person aggrieved." Here, our inquiry into the meaning of "aggrieved" is less a question of *who* may appeal but rather *when* a person may appeal. If a project proceeds far enough, there is no doubt that a person whose land is subject to condemnation will become "aggrieved."

[¶ 21] Chapter 61–16.1 provides somewhat different requirements for predominately local projects and for projects having majority funding from state or federal agencies. Each provides context for the meaning of "aggrieved." For local projects, after a resolution of necessity is adopted, a notice containing the resolution must be published and mailed to affected landowners. N.D.C.C. § 61–16.1–18. The notice must set a date and location for a public hearing and contain a place and time where affected landowners may file votes for and against the project. *Id.* Once the deadline for voting has passed, the board must determine whether the project is approved and make an order establishing or denying establishment of a project. N.D.C.C. § 61–16.1–19. Notice of that order must be published in the official county newspaper. *Id.* "Any right of appeal begins to run on the date of publication of the notice." *Id.*

[¶ 22] If a project proceeds under an agreement in which at least fifty percent of the costs are paid by a state or federal agency, the water resource board "may dispense with all other requirements of this chapter, other than those stated in this section." N.D.C.C. § 61–16.1–12.1. The Cossettes argue that section 12.1 does not apply because no federal or state agreement regarding payment of project costs exists or at least none has been provided to them. They do not deny that the U.S. Army Corps of Engineers has a critical role in the project. If such an agreement does exist, section 12.1 does not require publication of notice of an order establishing or denying establishment of the project, which is the beginning of the right to appeal for local projects under section 19. Section 12.1 simply provides for a public meeting at which the board determines whether the project is approved according to the votes of the affected landowners. Thus for projects proceeding under a federal cost sharing agreement, the date on which the right of appeal begins to run cannot start on publication of notice, since no publication is required. I would conclude that the point at which an affected landowner is "aggrieved" is when the votes are counted and the "board determine[s] the project is approved." N.D.C.C. § 61–16.1–12.1. In the event a project is not approved, it would seem unlikely any landowner would be "aggrieved" or eligible to appeal, thus avoiding unnecessary appeals of board decisions that do not end up leading to a project or condemnation action. My conclusion that one is not "aggrieved" by a resolution of necessity but only after the board has approved the project provides a consistent right of appeal regardless of whether a project is locally or federally funded and also avoids piecemeal appeals long disfavored by this Court. *See Horsley v. N.D. Workers Compensation Bureau*, 2001 ND 60, ¶ 13, 623 N.W.2d 377 (discussing "long-standing policy against piecemeal appeals").

[¶ 23] Our cases interpreting other statutes employing the term "aggrieved" in similar contexts are in accord. "Any person, or persons, jointly or severally, aggrieved by a decision of the board of county commissioners under this chapter, may appeal to the district court. . . ." N.D.C.C. § 11–33–12. Applying this statute, we have

held that a landowner was "aggrieved" by a final decision of the board of county commissioners where the decision changed zoning to allow an 8,100 acre mining and industrial complex within 200 feet of the landowner's property. *Dakota Resource Council v. Stark County Board of County Commissioners*, 2012 ND 114, ¶¶ 8–13, 817 N.W.2d 373. The appeal was not taken after the zoning commission voted to recommend that the county board of commissioners approve the change. *Id.* at ¶ 2. Instead, the appeal was taken against a zoning decision after it had received final approval, at which point nearby landowners were "factually aggrieved" by having had their interest diminished. *Id.* at ¶ 8.

[¶ 24] In the context of reviewing administrative agency decisions, we have said that the "potential to be aggrieved is not the equivalent of being aggrieved in fact." *Vickery v. N.D. Workers Comp. Bureau*, 545 N.W.2d 781, 783 (N.D. 1996). Vickery had received medical services for which the Workers Compensation Bureau had denied payment. Vickery had not been personally billed or denied service as a result of the Bureau's denial of payment. Despite Vickery's claim that most medical providers will bill the patient directly in this situation, this Court concluded that Vickery lacked standing because he had alleged only "the potential of injury rather than injury-in-fact." *Id.* at 784–85.

[¶ 25] Our decision in *Treiber v. Citizens State Bank*, 1999 ND 130, 598 N.W.2d 96, cited by the majority, discusses how this Court has used the term "aggrieved" in our cases analyzing when a party has standing to appeal. *Treiber* counsels against finding a party to be "aggrieved" where the harm is not immediate but is contingent on some future occurrence or merely a future possibility. *Id.* at ¶ 5. In *Treiber*, the Court raised sua sponte the possibility that the Bank, which was named as a defendant and had filed no cross-claim, was entitled to appeal dismissal of the action brought against it. *Id.* at ¶ 6. The only relief sought by the Bank was to have its mortgage against the property at issue be paid in the event that the request for partition and sale was granted. Id. After raising the issue and discussing it, we concluded that it was "unnecessary to determine whether the Bank is an aggrieved party" because Treiber had timely appealed. *Id.* at ¶ 7. Although *Treiber* is not interpreting a statutory term, it addresses the same subject of standing to appeal, and thus there is reason to think a term in our opinions bears a similar meaning when used in statutes addressing the same topic.

[¶ 26] "An aggrieved party is one who has some legal interest that *may be* enlarged or diminished by the appealed decision." *Id.* at ¶ 5 (emphasis added). Reading this sentence in isolation, the use of "may be" suggests potential future harm may be sufficient for a party to be aggrieved. The cases cited in *Treiber* do not support this proposition, and *Treiber* did not rely on this in its result. *Treiber* further goes on to say a "party's interest must be immediately, directly, and adversely affected, and an effect that is contingent or indirect, or that results merely in some possible, remote consequence, is insufficient." *Id.* Our standing cases reinforce the notion that "to be entitled to an appeal as an aggrieved person . . . a party must be injuriously affected by the decision." *Bernhardt v. Rummel*, 319 N.W.2d 159, 160 (N.D. 1982) (citing *Huber v. Miller*, 101 N.W.2d 136 (N.D. 1960)). An injury that has not yet materialized does not make one aggrieved if it remains contingent on a future event or otherwise remains a future possibility. *King v. Stark County*, 72 N.D. 717, 10 N.W.2d 877, 878 (1943) (concluding Highway Commissioner was not aggrieved by possible harm contingent on future tax

collections, because "[t]he right invaded must be immediate, not merely some possible remote consequence").

[¶ 27] The Cossettes assert they were "aggrieved" immediately upon passage of the resolution of necessity by the District. The appeal at issue here was filed only two days after the resolution of necessity was approved. At oral argument, the only injury the Cossettes pointed to was that they felt their property was sufficiently threatened that they had to hire a lawyer and expend attorney fees. An individual's decision to hire an attorney based on a personal feeling that property rights are threatened is too subjective a standard to determine whether the person is aggrieved within the meaning of this statute. The Cossettes asserted no harm other than being aggravated, annoyed, or threatened at the increased likelihood of having their property subject to condemnation. At the point of passage of the resolution of necessity, it may have seemed a near certainty that the Cossettes' land would be subject to a condemnation action. But at the time the resolution was appealed, no such action had been commenced and the District remained free to alter the project or otherwise change its mind. No votes of affected landowners had been submitted or counted. Whether a predominately local project under section 19 or a project under agreement with a federal agency under section 12.1, the process had not yet proceeded to the point where the Cossettes were "aggrieved" and entitled to appeal.

[¶ 28] For these reasons, I would hold that a resolution of necessity identifying a property, even one that declares a condemnation action will commence, is not sufficient to make a party "aggrieved" and entitled to appeal. I respectfully dissent.

[¶ 29] Jerod E. Tufte

Lisa Fair McEvers