FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 15, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2023 ND 230

Sargent County Water Resource District,
a North Dakota Political Subdivision,

Plaintiff, Appellee,
and Cross-Appellant

v.

Gregory S. Beck and Carol L. Beck, as Co-Trustees
of the Gregory S. Beck and Carol L. Beck Revocable
Living Trust dated September 8, 2020, Gerald P. Bosse
and Diana Bosse, as Co-Trustees of the Gerald and
Diana Bosse Irrevocable Land Trust dated the 13th day
of January, 2021, Gerald P. Bosse, Diana Bosse,
Mathew J. Bosse, Brent P. Bosse, and all other persons
unknown claiming an estate or interest in or lien or
encumbrance upon the real property described in the
Complaint, whether as heirs, legatees, devisees,
personal representatives, creditors or otherwise,

Defendants

and

Paul Mathews as Personal Representative of the Estate
of Nancy I. Mathews, Phyllis Delahoyde, and
Daniel G. Delahoyde,

Defendants, Appellants,
and Cross-Appellees

### No. 20220357

Appeal from the District Court of Sargent County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by McEvers, Justice.

Robert G. Hoy (argued), Stephen J. Hilfer (appeared), and Christopher M. McShane (on brief), West Fargo, ND, for plaintiff, appellee, and cross-appellant.

Derrick L. Braaten, Bismarck, ND, for defendants, appellants, and cross-appellees.

# Sargent Cty. Water Resource District v. Beck, et al.
## No. 20220357

**McEvers, Justice.**

[¶1] Paul Mathews as personal representative of the Estate of Nancy Mathews, Phyllis Delahoyde, and Daniel Delahoyde (collectively, "Landowners") appeal from a judgment condemning their property and an order denying their motion for a new trial. Sargent County Water Resource District ("District") cross-appeals from an order concluding Landowners' arguments were not foreclosed for failure to appeal the District's "Resolution of Necessity" or barred by res judicata or collateral estoppel. We affirm in part, concluding Landowners' arguments are not foreclosed, and reverse in part, concluding the drain project exceeds the maximum maintenance levy authorized by statute requiring the approval of the majority of landowners.

I

[¶2] In June 2021, the District commenced this eminent domain action seeking to acquire permanent and temporary easements over five properties adjacent to Drain 11. Drain 11 is a legal assessment drain in Sargent County that drains into the Upper Wild Rice River. The District sought to acquire the easements for a drainage project identified as the "Drain 11 Improvement Project" ("Project"). Landowners opposed this eminent domain action, asserting the Project is unlawful because it does not constitute "maintenance" and exceeds the six-year maximum maintenance levy without the approval of the majority of landowners. They contended the Project is not for a use authorized by law and condemnation of their property was unnecessary. The District argued Landowners' arguments were foreclosed because they did not appeal the District's "Resolution of Necessity" and their arguments are barred by res judicata or collateral estoppel.

[¶3] After a bench trial, the district court concluded Landowners' arguments are not foreclosed. The court granted condemnation, concluding the Project is for a use authorized by law and the easements sought are necessary for the Project. The court further concluded that no landowner vote was required for

the Project under N.D.C.C. § 61-16.1-45 because there was "no evidence the District is obligating the Drain 11 assessment district for costs beyond the four-dollar maximum maintenance levy threshold over a six-year period." The court entered judgment and authorized the District to take possession of the property.

[¶4]   In July 2022, Landowners moved for a new trial or to amend judgment, asserting newly discovered evidence. They argued the District's post-judgment board meeting minutes show the Project's cost has increased further beyond the maximum levy, which requires a landowner vote, and the need to condemn their property is speculative given the Project's new plans, which do not include Landowners' property in the initial construction. Landowners maintained that the Project does not constitute "maintenance." The district court denied Landowners' motion, concluding it lacked jurisdiction to amend judgment because it was served and filed more than 28 days after notice of entry of judgment. Further, the court denied the motion for a new trial because Landowners failed to identify newly discovered evidence in existence at the time of trial, which was not reasonably available to them. Landowners appeal, and the District cross-appeals.

II

[¶5]   "[W]hen a new trial is sought, the moving party is limited on appeal to the grounds presented to the district court in the motion for a new trial." *Prairie Supply, Inc. v. Apple Elec., Inc.*, 2015 ND 190, ¶ 7, 867 N.W.2d 335. Landowners have preserved the issues they raise on appeal by arguing those grounds to the district court in their new trial motion.

[¶6]   In an appeal from a bench trial, the district court's conclusions of law are fully reviewable and its findings of fact are reviewed under the clearly erroneous standard of review. *W. Energy Corp. v. Stauffer*, 2019 ND 26, ¶ 5, 921 N.W.2d 431. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if after reviewing all of the evidence, we are convinced a mistake has been made. *Id.*

2

[¶7]   The District argues the district court erred by allowing Landowners to challenge the legality of the Project in this eminent domain action. The District contends Landowners' arguments are foreclosed under res judicata or collateral estoppel, and for failure to appeal the "Resolution of Necessity" to the district court under N.D.C.C. § 61-16.1-54. The District asserts Landowners' arguments were already raised and rejected in *Banderet v. Sargent County Water Resource District*, 2019 ND 57, 923 N.W.2d 809.

[¶8] In *Banderet*, landowners—including Paul Mathews and Nancy Mathews—brought a declaratory and injunctive relief action to prevent the District from proceeding on the Project. 2019 ND 57, ¶ 5. They sought a judgment declaring that the Project "cannot be funded as maintenance within six years at $4 per acre being assessed" to them and that they are entitled to a hearing and vote on the Project. *Id.* The District moved to dismiss the complaint for failure to appeal its adoption of the resolution of necessity within 30 days. *Id.* at ¶ 6. The district court dismissed the action for lack of appellate subject matter jurisdiction. *Id.* This Court affirmed the dismissal, concluding the time for appealing the resolution of necessity expired. *Id.* at ¶¶ 17, 19. The Court emphasized that it "has consistently held an aggrieved party must appeal a local governing body's decision rather than seek *injunctive or declaratory relief* against the enforcement of the decision." *Id.* at ¶ 12 (emphasis added).

A

[¶9]   The District argues the same result in *Banderet* should result in this case because Landowners did not appeal the "Resolution of Necessity" to the district court. Under N.D.C.C. § 61-16.1-54, an aggrieved person may appeal an order or decision of the water resource board to the district court, which is governed by the procedure in N.D.C.C. § 28-34-01. Under N.D.C.C. § 28-34-01(1), the notice of appeal must be filed with the court within 30 days after the decision. The resolution of necessity, outlining the Project's scope and need, was adopted in 2016, and Landowners did not timely appeal that decision. Thus, the issue

before us is whether Landowners' arguments are foreclosed for failing to timely appeal the "Resolution of Necessity" to the district court.

[¶10] In *Banderet*, the landowners brought a declaratory and injunctive relief action to prevent the Project from proceeding. Here, the District brought an eminent domain action seeking to condemn Landowners' property. Landowners' arguments that the Project is unlawful are therefore raised in opposition to the District's action to take their property. Our reasoning in *Banderet* specifically relied upon the type of action brought and who brought the action:

> This Court has consistently held an aggrieved party must appeal a local governing body's decision rather than seek injunctive or declaratory relief against the enforcement of the decision. *See Hector v. City of Fargo*, 2014 ND 53, ¶ 23, 844 N.W.2d 542 (Stating "a statutory appeal provides an adequate legal remedy for reviewing a local governing body's decision, and in those cases where an appeal is authorized by law, an action for equitable relief generally is not available."); *Anderson v. Richland Cty. Water Res. Bd.*, 506 N.W.2d 362, 365 (N.D. 1993) (Stating "landowners' declaratory judgment action was inappropriate because N.D.C.C. § 28-34-01 'governs any appeal . . . from the decision of a local governing body.'"); *Olson v. Cass Cty.*, 253 N.W.2d 179, 182 (N.D. 1977) (Holding "[i]f the grievance of the person challenging a board's decision is of a type that could have been fairly litigated on appeal, then that statutory appeal is an adequate legal remedy, and no suit for injunction will lie as a substitute."); *Chester v. Einarson*, 76 N.D. 205, 219, 34 N.W.2d 418, 427-28 (1948) (Holding "[w]here the law provides an appeal from an order or determination of a board or commission whereby the correctness and validity of the order or decision may be reviewed the remedy so provided, if adequate, must be pursued and a party having the right of appeal may not disregard the remedy and obtain injunctive relief against the enforcement of the order or decision.").

> . . . .

> In this case, similar to *Olson*, the Landowners sought declaratory and injunctive relief, arguing the District ignored

4

statutory requirements relating to a public hearing and landowner vote after adopting the resolution of necessity for the Drain 11 project. The Landowners claim the District had jurisdiction to adopt the resolution of necessity, but it lacked jurisdiction to put language within the resolution purporting to waive all further legal process, including holding a public hearing and vote. As in *Olson*, we are not persuaded by the Landowners' arguments relating to declaratory and injunctive relief.

2019 ND 57, ¶¶ 12, 14.

[¶11] Significantly, *Banderet* and the cases relied on in *Banderet* were injunctive or declaratory relief actions brought by aggrieved landowners against a local governing body, not an eminent domain action brought by the local governing body against landowners. *See also Brandt v. City of Fargo*, 2018 ND 26, ¶ 13, 905 N.W.2d 764 (concluding district court did not err by dismissing appeals from resolutions of necessity while noting affirming dismissals did not "extinguish the property owners' ability to challenge the requirements of N.D.C.C. ch. 32-15 in the eminent domain proceedings"). While the landowners in *Banderet* were required to exhaust their administrative remedies prior to bringing an injunctive and declaratory relief action, Landowners are not foreclosed from challenging whether the Project is authorized by law in defending against an eminent domain action. We conclude the district court did not err in concluding *Banderet* does not foreclose Landowners' arguments.

B

[¶12] The District contends Landowners' arguments are barred by res judicata. "Res judicata, or claim preclusion, prevents *relitigation of claims* that were raised, or could have been raised, in prior actions between the same parties or their privies." *Riverwood Com. Park, L.L.C. v. Standard Oil Co.*, 2007 ND 36, ¶ 13, 729 N.W.2d 101 (emphasis added). Whether res judicata applies is a question of law, fully reviewable on appeal. *Est. of Seidel v. Seidel*, 2021 ND 6, ¶ 10, 953 N.W.2d 636. The doctrine should not be applied so rigidly as to defeat the ends of justice or to work an injustice. *Wetch v. Wetch*, 539 N.W.2d 309, 312 (N.D. 1995).

5

> The doctrine of res judicata is a judicially created doctrine which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquility. There are situations, at least in eminent domain proceedings (including inverse condemnations), in which, by reason of statutes or otherwise, it becomes impossible, unfair or impractical to apply the doctrine.

*Oakes Mun. Airport Auth. v. Wiese*, 265 N.W.2d 697, 702 (N.D. 1978) (Pederson, J., concurring in part) (cleaned up).

[¶13] The question is whether failure to appeal from a resolution of necessity precludes further consideration of the issue in an eminent domain proceeding under the doctrine of res judicata. We discussed eminent domain under N.D.C.C. ch. 32-15 in the context of an appeal from a resolution of necessity stating, "Under N.D.C.C. § 32-15-05(2), 'the legislature has entrusted the right to review a determination of the question of necessity in an eminent domain action to the judicial branch of government.'" *Brandt*, 2018 ND 26, ¶ 11. The court's role in reviewing public necessity was described as "limited to the question of whether the taking of the particular property sought to be condemned is reasonably suitable and usable for the authorized public use." *Id.* In *Brandt*, we affirmed the district court's dismissal of Brandt's attempted appeal from a resolution of necessity stating, "[A]ffirming the dismissals does not extinguish the property owners' ability to challenge the requirements of N.D.C.C. ch. 32-15 in eminent domain proceedings." *Id.* at ¶ 13.

[¶14] In *Cossette v. Cass County Joint Water Resource District*, a majority of the Court reversed the district court's dismissal of property owners Cossettes' appeal of resolution of necessity. 2017 ND 120, ¶ 15, 894 N.W.2d 858. The Court noted the resolution provided a legal description of the Cossettes' property and that it was necessary for the construction, operation, and maintenance of the diversion project. *Id.* The resolution specifically stated that the water resource district "will proceed with the requisite legal proceedings as necessary under Section 61-16.1-09(2) and Chapter 32-15 of the North Dakota Century Code to acquire a Permanent Right of Way Easement over, across, and through the Property." *Id.* The majority of the Court concluded that the resolution

6

"adversely affected the Cossettes' property rights by describing the Cossettes' property and stating the District will proceed with eminent domain to acquire an interest in the property," aggrieving them upon passage of the resolution "indicating the District will acquire an interest in the Cossettes' property through eminent domain" under N.D.C.C. § 61-16.1-54. *Id.*

[¶15] Applying the doctrine of res judicata here to bar any further review of matters contained in the resolution of necessity would be unjust for several reasons. Although Landowners here failed to timely appeal the resolution of necessity which barred judicial review, the district court noted in the underlying declaratory judgment action that the District, being well aware of opposition to the project and a request for a vote, considered and passed the resolution of necessity without including it on the agenda of a regularly scheduled meeting, then erroneously told the landowners at the next meeting that the time to appeal the decision had already expired. The district court described the District's action as "minimal compliance with statutory requirements." In addition, a review of the resolution of necessity itself shows it would be unjust to consider the issue res judicata.

[¶16] The resolution states: "WHEREAS, the Drain 11 Project will not require the addition of any new properties to the existing Drain 11 assessment district." At best, this statement is misleading, as the District sought permanent and temporary easements over five properties in this eminent domain action without including a legal description of the affected properties. If further property interests were "not require[d]," there would be no need for an eminent domain proceeding. The resolution also gives broad authorization to an engineering firm and a law firm to design the project, identify the property interests needed, negotiate with landowners, prepare a bond issue, and secure financing. The District further resolved, that "construction of the Drain 11 Project does not require an excess levy vote, an additional assessment district vote, or any other additional legal proceedings under North Dakota law." The District has discretion to utilize this method to levy special assessments for maintenance. *See* N.D.C.C. § 61-16.1-45(1). While it may have been the intent of the District to keep the Project within the financial parameters which would not require a vote, that objective plainly failed, as

7

explained in further detail below, when the District obligated costs beyond the maximum maintenance levy and authorized the accumulation of a fund exceeding the six-year maximum levy. A resolution of necessity stating otherwise does not absolve the District from demonstrating that the Project is a use authorized by law and that the property to be taken is necessary to achieve that use.

[¶17] Although the engineering firm conducted a study and presented the Project cost to the District before the resolution of necessity was adopted, the conclusory resolution fails to acknowledge any such study or cost or otherwise notify any interested landowner that their property would be subject to condemnation. In fact, the resolution purports to alleviate the landowners' concern by stating the Project will not require the addition of any new properties, an excess levy vote, an additional assessment district vote, or additional legal proceedings. While the resolution authorizes the engineering firm and law firm to negotiate with landowners and "acquire the requisite temporary and permanent right of way to accommodate the Project," the resolution fails to provide with any level of specificity what actions on behalf of the District are necessary to achieve the Project. *Cf. Cossette*, 2017 ND 120, ¶ 15. On its face, the resolution recognizes that further design of the project may be needed and that financing will need to be secured. Given such vagueness and uncertainty, requiring the landowners to challenge these portions of the resolution of necessity within 30 days is contrary to principles of justice, fairness, and practicality. While there may be portions of the resolution of necessity to which the doctrine of res judicata should apply, we are not persuaded to apply it to the issues before us.

[¶18] We conclude the District's res judicata argument fails because *Banderet* involved different legal and equitable claims for relief, *see Riverwood*, 2007 ND 36, ¶ 13, and applying res judicata in this eminent domain action would be unjust.

C

[¶19] As to the District's argument regarding collateral estoppel, or issue preclusion, the doctrine "precludes litigation of issues actually litigated and

8

necessary to the outcome of the prior case, even if such issues are subsequently presented as part of a different 'claim.'" *Riverwood*, 2007 ND 36, ¶ 14; *see also Fettig v. Est. of Fettig*, 2019 ND 261, ¶ 21, 934 N.W.2d 547 (noting collateral estoppel requires a final judgment on the merits). In *Fettig*, at ¶ 21, we noted:

> Four tests must be met before collateral estoppel will bar relitigation of a fact or issue involved in a previous action: (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Because the district court in *Banderet* dismissed the case for lack of appellate subject matter jurisdiction and the dismissal was affirmed by this Court, the final judgment was not on the merits. *Bolinske v. Sandstrom*, 2022 ND 148, ¶ 11, 978 N.W.2d 72. In addition, prior to the eminent domain action, Landowners did not have a fair opportunity to be heard on the matter as previously discussed under the issue of res judicata. Thus, we conclude Landowners' arguments are not barred by collateral estoppel.

IV

[¶20] Landowners argue the Project exceeds the six-year maximum maintenance levy under N.D.C.C. § 61-16.1-45.

> Statutory interpretation is a question of law, fully reviewable on appeal. The primary objective in interpreting a statute is to determine the intent of the legislation. In ascertaining the intent of the legislation, we look first to the words in a statute, giving them their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules

9

of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4).

*Kutcka v. Gateway Bldg. Sys., Inc.*, 2023 ND 91, ¶ 6, 990 N.W.2d 605 (alteration in original).

[¶21] Section 61-16.1-45, N.D.C.C., provides the maximum maintenance levy for a drainage project without requiring a landowner vote:

> 1. If it is desired to provide for maintenance of an assessment drain in whole or in part by means of special assessments, the levy in any year for the maintenance may not exceed four dollars per acre [.40 hectare] on any agricultural lands benefited by the drain. . . .
>
>     . . . .
>
> 2. In case the maximum levy or assessment on agricultural and nonagricultural property for any year will not produce an amount sufficient to cover the cost of cleaning out and repairing the drain, a water resource board may accumulate a fund in an amount not exceeding the sum produced by the maximum permissible levy for six years.
>
> 3. If the cost of, or obligation for, the cleaning and repairing of any drain exceeds the total amount that may be levied by the board in any six-year period, the board shall obtain the approval of the majority of the landowners as determined by chapter 61-16.1 before obligating the district for the costs.

The parties agree the maximum maintenance levy each year within the assessment district based on $4 per acre is $283,003.64. Thus, the maximum maintenance levy over a six-year period is $1,698,021.84. Landowners assert that because the total Project cost of $3.9 million exceeds this six-year maintenance levy, the Project required the approval of the majority of the landowners.

10

[¶22] The district court found "there is no evidence that was submitted that the District's share of the Project will exceed the six-year accumulation." The court concluded that no landowner vote was required for the Project "because there is no evidence the District is obligating the Drain 11 assessment district for costs beyond the four-dollar maximum maintenance levy threshold over a six-year period." The District concedes the total cost of the Project is $3.9 million but contends Landowners' argument fails when taking into account "cost-share contributions" from other sources and the District's "funds on hand." The District asserts the "local share" is $2.28 million, which includes the maximum maintenance levy ($1.7 million) plus its "funds on hand" ($581,000). The District outlines the costs as follows:

| | |
|---|---|
| State Water Commission Cost-Share | ~$1.4 million |
| Sargent County Commission Crossing Cost-Share | ~$200,000 |
| Local Share Total | ~$2.28 million |
| *Maximum Maintenance Levy* | *~$1.7 million* |
| *Remainder (paid with funds on hand)* | *~$581,000* |
| **Total Project Cost** | **~$3.9 million** |

The District does not state where the $581,000 of "funds on hand" originated from or cite any evidentiary support for the source of funds. Landowners argue these funds are prior maintenance levies. At oral argument, counsel for the District conceded the $581,000 must be some form of tax as the District has no other means of accumulating funds. The parties disagree as to what costs the Project has obligated the district for under N.D.C.C. § 61-16.1-45(3). The District argues the Project has only obligated the district for costs of the maximum levy ($1.7 million). Landowners argue the Project obligated the district for costs of the entire Project ($3.9 million).

[¶23] Section 61-16.1-45(2), N.D.C.C., recognizes a single-year levy may be insufficient "to cover the cost of cleaning out and repairing the drain," allowing for the accumulation of funds. However, that accumulated amount may not exceed "the sum produced by the maximum permissible levy for six years," *id.*, which the parties agree is approximately $1.7 million. Section 61-16.1-45(3), N.D.C.C., provides, "If the cost of, or obligation for," the Project exceeds $1.7 million, "the board shall obtain the approval of the majority of the

landowners . . . before obligating the district for the costs." Because the funds from the State Water Commission and Sargent County Commission Crossing are from sources other than the District, we conclude those funds do not "obligat[e] the district." However, $2.28 million of the Project consists of wholly district funds levied or taxed against district landowners. This amount is more than "the sum produced by the maximum permissible levy for six years," $1.7 million, and thus violates N.D.C.C. § 61-16.1-45(2). Further, because "the cost of, or obligation for," the Project exceeds $1.7 million, the District was required to obtain approval of the majority of landowners before obligating the district for the costs. The District's board obligated the district for $2.28 million of district funds without landowner approval in violation of N.D.C.C. § 61-16.1-45(3).

[¶24] In 2020, the Attorney General was similarly asked through a request for an attorney general opinion,

> [W]hether a vote of the landowners is required before commencing a project under N.D.C.C. ch. 61-16.1 referred to as maintenance by a Resolution of Necessity when the project, as a whole, will exceed the maximum six-year levy under N.D.C.C. § 61-16.1-45, and also whether the maximum accumulated maintenance levy under N.D.C.C. §§ 61-16.1-45 and 61-21-46 are calculated on a project-by-project basis.

N.D. Op. Att'y Gen. 2020-L-04, at 2 (Sept. 1, 2020). He concluded "that maintenance projects may be completed in phases without a vote as long as a phase does not obligate the district for costs beyond the maximum maintenance levy threshold and that the maximum accumulated maintenance levy under N.D.C.C. §§ 61-16.1-45 and 61-21-46 is calculated on a project-by-project basis." *Id*. We agree with the Attorney General's conclusion to the extent it states a district may not accumulate a fund exceeding the six-year maximum levy or obligate the district for costs beyond the maximum maintenance levy without a landowner vote. *See Hagen v. N.D. Ins. Rsrv. Fund*, 2022 ND 53, ¶ 16, 971 N.W.2d 833 (giving "respectful attention" to attorney general opinions and following them when they are persuasive).

12

[¶25] "Before property can be taken it must appear . . . [t]hat the use to which it is to be applied is a use authorized by law." N.D.C.C. § 32-15-05(1). "Where a property owner contests 'public use' under N.D.C.C. ch. 32-15, 'there is a presumption a use is public when the Legislature has declared it to be and we treat the Legislature's decision with the deference due a coordinate branch of government.'" *Montana-Dakota Utilities Co. v. Behm*, 2019 ND 139, ¶ 9, 927 N.W.2d 865 (quoting *City of Medora v. Golberg*, 1997 ND 190, ¶ 8, 569 N.W.2d 257). However, "the ultimate decision regarding whether a proposed use of property is, in fact, a public use is a judicial question." *Behm*, at ¶ 9.

[¶26] The district court concluded the Project was a use authorized by law under N.D.C.C. § 32-15-02(3) because the purpose of the Project was "reconstruction, repair, improvement, maintenance, and operation of a legal assessment drain, which is a canal or ditch used for draining Sargent County." Section 32-15-02(3), N.D.C.C., authorizes eminent domain for certain public uses, including canals and ditches used for draining. The public uses authorized by subsection 3 carry an additional requirement: "the mode of apportioning and collecting the costs of such improvement shall be such as may be provided in the statutes by which the same may be authorized." N.D.C.C. § 32-15-02(3). Assuming without deciding the entire project constitutes "maintenance" for purposes of N.D.C.C. § 61-16.1-45, the Project as approved requires an unlawful accumulation of funds in excess of the maximum permissible levy and unlawfully obligates the district for costs beyond the maximum maintenance levy under that section. Accordingly, the Project as currently designed and approved does not satisfy "the mode of apportioning and collecting the costs of such improvement" as authorized by N.D.C.C. § 61-16.1-45 and thus does not satisfy the additional cost limitations for public use under N.D.C.C. § 32-15-02(3). Because the Project as currently designed and approved exceeds the statutory maximum maintenance levy, it cannot proceed under its current cost without the approval of the majority of landowners as required by N.D.C.C. § 61-16.1-45(3).

[¶27] We conclude the district court clearly erred by finding there was no evidence the District's share of the Project will exceed the six-year

accumulation. Further, the court erred in concluding the Project was a use authorized by law under N.D.C.C. § 32-15-02(3) and no landowner vote was required for the Project.

V

[¶28] We affirm the order concluding Landowners' arguments are not foreclosed. The "Drain 11 Improvement Project," however, cannot proceed in its current form without the approval of the majority of landowners. Thus, we need not reach Landowners' additional arguments that the Project does not "provide for maintenance of an assessment drain" under N.D.C.C. § 61-16.1-45(1) and that the district court abused its discretion in denying their new trial motion. The judgment is reversed.

[¶29] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr